Filed 4/26/18

# IN THE SUPREME COURT OF CALIFORNIA

THE PEOPLE,

      Plaintiff and Respondent,

      v.

LORENZO CHAVEZ,

      Defendant and Appellant.

S238929

Ct.App. 3 C074138

Yolo County
Super. Ct. No. CRF042140

A trial court has broad power to dismiss an action against a criminal defendant in "furtherance of justice" under Penal Code section 1385.[1]  (§ 1385, subd. (a) ["The judge or magistrate may . . . in furtherance of justice, order an action to be dismissed."].)  A somewhat different kind of relief is available under section 1203.4, which permits eligible defendants to obtain dismissal of accusations after completing probation.  (§ 1203.4, subd. (a) [providing in relevant part that an eligible defendant "shall, at any time after the termination of the period of probation . . . be permitted by the court to withdraw his or her plea of guilty or plea of nolo contendere . . . [and] the court shall thereupon dismiss the accusations or information against the defendant"].)  After pleading no contest to criminal charges in 2005 and completing probation, appellant Lorenzo Chavez now seeks dismissal of his convictions under Penal Code section 1385, but not under section 1203.4.  To justify his request for dismissal under section 1385,

---

[1]     All further undesignated statutory references are to the Penal Code.

Chavez claims he received ineffective assistance of counsel and was therefore unaware of the immigration consequences of the plea he entered eight years earlier. He asks the court, in the interests of justice, to remedy this wrong and expunge his record.

Under section 1385, Chavez can make this request at any time before the trial court places him on probation following imposition of a suspended sentence. In this case, however, Chavez's term of probation had expired before he invited the court to provide relief. So we must resolve whether section 1385 confers authority on a trial court to dismiss an action after probation is completed, and whether the authority conferred by section 1385 is circumscribed by section 1203.4.

What we hold is that a trial court exceeds the authority conferred by section 1385 when it dismisses an action after the probation period expires. Under well-established case law, a court may exercise its dismissal power under section 1385 at any time before judgment is pronounced — but not after judgment is final. (*People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 524, fn. 11 (*Romero*).) Yet in the case of a successful probationer, final judgment is never pronounced, and after the expiration of probation, may never be pronounced. To address this situation, we extend *Romero* by concluding that section 1385's power may be exercised until judgment is pronounced or when the power to pronounce judgment runs out. Because the trial court's authority to render judgment ends with the expiration of probation, the court has no power to dismiss under section 1385 once probation is complete.

Accordingly, we affirm the judgment of the Court of Appeal, but on a different rationale. We affirm the judgment because — at least under the specific terms of section 1385 — the trial court lacked the power to dismiss the petitioner's convictions after he completed his probation.

2

## I.

In May 2005, Chavez pleaded no contest to charges that he offered to sell a controlled substance and failed to appear after being released on his own recognizance. The trial court suspended imposition of sentence and placed Chavez on probation for four years, a term he successfully completed in 2009. Nearly four years later, in March 2013, Chavez — claiming that he received ineffective assistance of counsel — invited the court to exercise its authority under section 1385 to dismiss his previous convictions in the interests of justice. The court refused, stating that it was not aware of "any case holding that section 1385 authorizes a trial court to grant a motion to dismiss after probation has expired." (*People v. Chavez* (2016) 5 Cal.App.5th 110, 114 (*Chavez*).) The court stated that it had authority to grant Chavez relief under section 1203.4, but as he did not make his request under that section, the request must be denied.

Why he did not seek relief under section 1203.4 is something Chavez sought to explain in his petition for review. Under prevailing interpretations of relevant federal immigration law, dismissal under section 1203.4 is not understood to erase a defendant's conviction — so such a dismissal would not have relieved Chavez of negative immigration consequences. (See *Nunez-Reyes v. Holder* (9th Cir. 2011) 646 F.3d 684, 689–690 [agreeing that "a first-time simple drug possession offense expunged under a state rehabilitative statute is a conviction under the immigration laws" (internal brackets omitted)]; *People v. Park* (2013) 56 Cal.4th 782, 803 [describing section 1203.4 as "a rehabilitative provision that rewards a person who has successfully completed probation"]; *People v. Vasquez* (2001) 25 Cal.4th 1225, 1230 [section 1230.4 " 'does not purport to render the conviction a legal nullity' "].) Chavez further maintained that to deny him dismissal under section 1385 would deprive him of any avenue for relief.

3

Chavez is right that certain means for obtaining relief are out of his reach at this time. In *People v. Villa* (2009) 45 Cal.4th 1063, 1066, we held that a defendant who has finished his probation is "ineligible for relief by way of a writ of habeas corpus." Likewise, in *People v. Kim* (2009) 45 Cal.4th 1078, 1108–1009 (*Kim*), we concluded that the defendant — "at this late date" many years after his conviction — was "procedurally barred from obtaining relief by way of *coram nobis*." Chavez stands in similar stead to the defendants in *Villa* and *Kim* and cannot pursue relief via either of these writs.

What we question is whether Chavez is correct in claiming he has no avenue of relief other than section 1385. Chavez did not brief the effect of the postconviction remedy afforded by section 1473.7. Section 1473.7, which came into effect January 1, 2017, allows "[a] person no longer imprisoned or restrained" to "prosecute a motion to vacate a conviction" if the conviction was invalid "due to a prejudicial error damaging the moving party's ability to meaningfully understand, defend against, or knowingly accept the actual or potential adverse immigration consequences of a plea of guilty or nolo contendere." (§ 1473.7, subd. (a)(1).) While we take judicial notice of section 1473.7, we recognize that neither Chavez nor the People briefed the applicability of the statute. So we express no view on the scope of section 1473.7.

Without the benefit of briefing on section 1473.7 and without mentioning that section, the Court of Appeal concluded that "section 1203.4 is the exclusive method for a trial court to dismiss the conviction of a defendant who has successfully completed probation." (*Chavez*, *supra*, 5 Cal.App.5th at p. 113.) The Court of Appeal reached this conclusion after analyzing the second issue presented for our review — whether section 1203.4 eliminates the trial court's power to dismiss a case pursuant to section 1385 after the period of probation has ended. The court answered that question in the affirmative, reasoning that in enacting —

4

and repeatedly revising — section 1203.4, the Legislature has "provided clear legislative direction that the courts do not have authority under section 1385 to grant the requested relief." (*Chavez*, *supra*, 5 Cal.App.5th at p. 122.)

What the Court of Appeal did not address is whether section 1385, by its own terms, applies to probationers who have finished their probation. Nonetheless, if a court is without power to dismiss under section 1385 irrespective of the operation of section 1203.4, then we must affirm the appellate decision. (See *Cedars-Sinai Medical Center v. Superior Court* (1998) 18 Cal.4th 1, 6 [noting occasions on which we have "addressed a dispositive issue not raised by the parties below"]; *McClain v. Octagon Plaza, LLC* (2008) 159 Cal.App.4th 784, 802 ["we will affirm the judgment on any ground properly supported by the record"].) So we begin with this dispositive question.

## II.

To resolve whether trial courts have the power under section 1385 to dismiss actions against defendants who have successfully completed probation, we must analyze the interplay between section 1385 and the probation statutes. In so doing, we consider the text of the statutes, "bearing in mind that our fundamental task in statutory interpretation is to ascertain and effectuate the law's intended purpose." (*Weatherford v. City of San Rafael* (2017) 2 Cal.5th 1241, 1246; accord *Los Angeles County Bd. of Supervisors v. Superior Court* (2016) 2 Cal.5th 282, 293.) We assess not only "the ordinary meaning of the language in question" but also "the text of related provisions, terms used in other parts of the statute, and the structure of the statutory scheme." (*Larkin v. Workers' Comp. Appeals Bd.* (2015) 62 Cal.4th 152, 157–158; accord *Winn v. Pioneer Medical Group, Inc.* (2016) 63 Cal.4th 148, 155–156.)

5

## A.

In a system of separated powers, courts observe jurisdictional limits and focus scarce judicial resources on deciding cases within the scope of their authority. (See *Lockyer v. City and County of San Francisco* (2004) 33 Cal.4th 1055, 1068 [laying out "the classic understanding of the separation of powers doctrine — that the legislative power is the power to enact statutes . . . and the judicial power is the power to interpret statutes and to determine their constitutionality"]; *State Dept. of Public Health v. Superior Court* (2015) 60 Cal.4th 940, 956 [emphasizing that courts are not authorized to "rewrite statutes"]; *Carlson v. Green* (1980) 446 U.S. 14, 36 [stating that within the federal context, "Congress has broad authority to establish priorities for the allocation of judicial resources in defining the jurisdiction of federal courts"].) The term "jurisdiction," however, carries two distinct meanings we must distinguish in resolving this case. One refers to ordinary acts in excess of jurisdiction. The other concerns so-called "fundamental" jurisdiction, the quality that dictates whether a court has any power at all to resolve a case.

Fundamental jurisdiction is, at its core, authority over both the subject matter and the parties. (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 ["Lack of jurisdiction in its most fundamental or strict sense means an entire absence of power to hear or determine the case, an absence of authority over the subject matter or the parties."]; *People v. Ford* (2015) 61 Cal.4th 282, 286 (*Ford*) [same]; *Kabran v. Sharp Memorial Hospital* (2017) 2 Cal.5th 330, 339 (*Kabran*) [same].) When a court lacks fundamental jurisdiction, its ruling is void. A claim based on a lack of fundamental jurisdiction may be raised at any point in a proceeding, including for the first time on appeal. (*Ford*, *supra*, 61 Cal.4th at p. 286, citing *People v. Lara* (2010) 48 Cal.4th 216, 225; *Kabran*, *supra*, 2 Cal.5th at p. 339 [same].) The ability to lodge objections against a court's fundamental

6

jurisdiction late in the proceeding is a consequence of the fact that such jurisdiction cannot be conferred by acts or omissions of the parties. (*Kabran*, *supra*, 2 Cal.5th at p. 339.)

Even when there's no question that a court's action is well within the scope of its fundamental jurisdiction, the court may still exceed constraints placed on it by statutes, the constitution, or common law.[2] (*Ford*, *supra*, 61 Cal.4th at pp. 286–287.) When a trial court fails to act within the manner prescribed by such sources of law, it is said to have taken an ordinary act in excess of jurisdiction. (*Id.* at p. 287.) Such "ordinary" jurisdiction, unlike fundamental jurisdiction, can be conferred by the parties' decisions — such as a decision not to object to any perceived deficiency — and so is subject to defenses like estoppel, waiver, and consent. (*Ibid.*; *Kabran*, *supra*, 2 Cal.5th at p. 340.) In this case, we are concerned not with a court's fundamental jurisdiction to act at all once defendant's probation has expired, but with the court's authority to act under a particular statute.

Specifically, we are concerned with a trial court's authority under section 1385 to dismiss an action after the probation is complete. What section 1385 provides, in pertinent part, is that "[t]he judge or magistrate may, either of his or her own motion or upon the application of the prosecuting attorney, and in furtherance of justice, order an action to be dismissed." (§ 1385, subd. (a).) Section 1385 thus "authorizes the trial court to order the dismissal of a criminal action." (*People v. Hernandez* (2000) 22 Cal.4th 512, 521, italics removed (*Hernandez*).)

 Nothing in the statute suggests the court can carry out such a dismissal when the action is no longer before the court. (See *People v. Espinoza* (2014) 232

---

[2]     On the other hand, when a court acts within the boundaries prescribed by law, it necessarily possesses fundamental jurisdiction.

Cal.App.4th Supp. 1, 6 (*Espinoza*) ["relief under section 1385 must be sought promptly while there is still an ongoing action or pending proceeding"].) It is for this reason that our courts — and the parties here — agree that section 1385 does not allow a trial court to act after a judgment has become final. (See *id.* at p. Supp. 7 ["a trial court lacks postjudgment jurisdiction to dismiss a final conviction under section 1385"]; *People v. Kim* (2012) 212 Cal.App.4th 117, 122 [ruling that the "[u]se of section 1385" to vacate "a long since final judgment of conviction" "would be inconsistent with the Supreme Court's strict focus on the language of the statute"]; *People v. Barraza* (1994) 30 Cal.App.4th 114, 121, fn. 8 [stating that section 1385 "has never been held to authorize dismissal of an action after the imposition of sentence and rendition of judgment"]; accord *People v. Orabuena* (2004) 116 Cal.App.4th 84, 97–98 (*Orabuena*) [finding that the court may exercise its dismissal authority under section 1385 because "the court had not rendered judgment or sentenced defendant"].) While these decisions underscore the limits on a court's otherwise considerable powers under section 1385, they do not settle a related question: Given that a grant of probation is not a final judgment, *when* — if ever, for purposes of section 1385 — does a judgment become final for a defendant who is granted and completes probation?

The answer lies in the probation statutes and our cases interpreting them. Section 1203, subdivision (a) defines "probation" as "the suspension of the imposition or execution of a sentence and the order of conditional and revocable release in the community under the supervision of a probation officer." Going as far back as *Stephens v. Toomey* (1959) 51 Cal.2d 864, we have explained that neither forms of probation — suspension of the imposition of sentence or suspension of the execution of sentence — results in a final judgment. In a case where a court suspends imposition of sentence, it pronounces no judgment at all, and a defendant is placed on probation with "no judgment pending against [him]."

8

(*Id.* at pp. 871–872.)  In the case where the court suspends execution of sentence, the sentence constitutes "a judgment provisional or conditional in nature."  (*Id.* at pp. 870–871.)  The finality of the sentence "depends on the outcome of the probationary proceeding" and "is not a final judgment" at the imposition of sentence and order to probation.  (*Id.* at p. 871.)  Instead of a final judgment, the grant of probation opens the door to two separate phases for the probationer:  the period of probation and the time thereafter.

During the probation period, the court retains the power to revoke probation and sentence the defendant to imprisonment.  Sections 1203.2 and 1203.3 elaborate upon the fundamentally revocable nature of probation.  Section 1203.3, subdivision (a), for instance, provides that "[t]he court shall have authority *at any time during the term of probation* to revoke, modify, or change its order of suspension of imposition or execution of sentence."  (Italics added.)  Similarly, section 1203.2, subdivision (c) provides that the court may decide to revoke release, terminate probation, and order that the person be delivered to custody.  (§ 1203.2, subd. (c) ["Upon any revocation and termination of probation . . . the person shall be delivered over to the proper officer to serve his or her sentence, less any credits herein provided for."].)  So, the court's power to punish the defendant, including by imposing imprisonment, continues during the period of probation.  (§ 15 [specifying imprisonment as one of the forms of punishment for a public offense]; *People v. Williams* (1944) 24 Cal.2d 848, 853–854 [holding that the judgment committing the defendant to custody was valid since "the order revoking probation was made within the probationary period"]; see also, *People v. Banks* (1959) 53 Cal.2d 370, 384–385 ["The powers of the court, over the defendant and the cause, when it retains jurisdiction as provided by Penal Code, sections 1203 through 1203.4, 1207, 1213, and 1215, are well nigh plenary in character . . . ."].)  Consistent with the court's plenary power during the probation

9

period, it may dismiss a criminal action in the interests of justice through this period.**3**

Once probation ends, however, a court's power is significantly attenuated. Its power to impose a sentence over the defendant ceases entirely — a result embodying the ideal that a court may not dangle the threat of punishment over a former probationer indefinitely. Such a possibility would raise both "serious due process concerns" and fears of nullifying statutory provisions limiting the period of probation. (See *People v. Leiva* (2013) 56 Cal.4th 498, 509, 517.) What's more, the court at that point may no longer revoke or modify its order granting probation. (§ 1203.2, subd. (a) [specifying that the provision applies "[a]t any time during the period of supervision"]; § 1203.3, subd. (a) [providing that the court may exercise its authority "at any time during the term of probation"]; *In re Griffin* (1967) 67 Cal.2d 343, 346 (*Griffin*) [listing cases holding that, after the end of the probation period, " 'the court loses jurisdiction or power to make an order revoking or modifying the order suspending the imposition of sentence or the execution thereof and admitting the defendant to probation' "]; *In re Daoud* (1976) 16 Cal.3d 879, 882 ["A probation order may be revoked or modified only during the term of probation."]; *In re Bakke* (1986) 42 Cal.3d 84, 89 (*Bakke*) [same]; *People v. O'Donnell* (1918) 37 Cal.App. 192, 197 ["When, therefore, the legislature says, as it has said, that the order of suspension and probation may be

---

**3**      We note, however, that the nature and scope of section 1385 relief available during a period of probation are separate questions from whether the power to grant section 1385 relief exists at all. Just because a court may, in its discretion, dismiss an action during the period of probation does not mean that its discretion is unfettered. (E.g., *People v. Orin* (1975) 13 Cal.3d 937, 947 ["it would frustrate the orderly and effective operation of our criminal procedure as envisioned by the Legislature if without proper and adequate reason section 1385 were used to terminate the prosecution of defendants for crimes properly charged in accordance with legal procedure"]; *People v. Williams* (1998) 17 Cal.4th 148, 158–162 [listing the various ways in which a court may abuse its discretion under section 1385].)

revoked or modified *during the term of probation*, . . . the necessary implication is that it was the legislative intention not to confer upon the court the right to exercise that power after the time at which the period of probation has expired."].) In particular, the court cannot extend the term of probation, change its conditions, or otherwise subject the defendant to punishment in lieu of the successfully completed probation. (*People v. Howard* (1997) 16 Cal.4th 1081, 1092 (*Howard*) ["Probation is neither 'punishment' (see § 15) nor a criminal 'judgment' (see § 1445)."]; *People v. Mancebo* (2002) 27 Cal.4th 735, 754 ["probation is not punishment"].)

In fact, section 1203.3 provides for automatic discharge at the end of the probation term. (§ 1203.3, subd. (b)(3) ["In all probation cases, if the court has not seen fit to revoke the order of probation and impose sentence or pronounce judgment, the defendant shall at the end of the term of probation or any extension thereof, be by the court discharged subject to the provisions of these sections."]; *People v. White* (1982) 133 Cal.App.3d 677, 682–683 ["An order revoking probation must be made within the period of time circumscribed in the order of probation. Otherwise, the probationary period terminates automatically on the last day."]; *People v. Smith* (1970) 12 Cal.App.3d 621, 625 [same].) Without special circumstances allowing for an extension,[4] discharge from probation is mandatory once the probation term expires. And, for good reason, the court loses its ability to

---

[4]    An extension beyond the end of the term of probation may occur in a case where a party consents to a stay or continuance which extends the court's power to act to a later date. In such circumstances, the party may be estopped from contesting the court's jurisdiction at that later date. (*Griffin*, *supra*, 67 Cal.2d at pp. 347–349; *Bakke*, *supra*, 42 Cal.3d at pp. 89–90; *Ford*, *supra*, 61 Cal.4th at pp. 288–289.) No such circumstances present themselves here. The People have not consented to any indeterminate stay or continuance which would allow Chavez, some four years after finishing probation, to move for relief under section 1385 without the People being able to raise a jurisdictional objection.

pronounce judgment on the defendant at this point. So, in effect, the answer to when a judgment becomes final for a successful probationer is "never." We extend *Romero*'s logic to address such a situation. We hold that, at the point when a court may no longer impose final judgment on a defendant, its authority for granting him relief under section 1385 runs out.

We can reach this conclusion through an alternative route: by inferring that, in the context of section 1385, the pendency of a criminal action continues into and throughout the period of probation — when the court may still punish the defendant — but expires when that period ends. (See § 683 [defining a criminal action as a proceeding "by which a party charged with a public offense is accused and brought to trial and punishment"]; *People v. Picklesimer* (2010) 48 Cal.4th 330, 337 (*Picklesimer*) [holding that a defendant may not seek relief in a case where the People's "criminal prosecution" of him was "long-since-final"].) And because section 1385 confers a trial court with the power to dismiss only criminal actions (or parts thereof) (*Hernandez*, *supra*, 22 Cal.4th at pp. 521–522), the court acts in excess of the jurisdiction permitted by the statute when it purports to effectuate a dismissal after the probation period has passed.

This conclusion aligns with past decisions relevant to the question before us. In *Espinoza*, the defendant — like Chavez — had pleaded guilty to criminal charges, received suspended sentences, and successfully completed his probation terms many years before he again came to the attention of the court. (*Espinoza*, *supra*, 232 Cal.App.4th at pp. Supp. 3–4.) As is true of Chavez, Espinoza was a noncitizen caught in the crosshairs of immigration laws. (*Id.* at p. Supp. 4.) When the federal government began detention proceedings against him, Espinoza asked the superior court to exercise its authority under section 1385 to dismiss his convictions in the interests of justice. (*Ibid.*) The court denied the request on the ground that it lacked jurisdiction to act under section 1385. (*Ibid.*)

The appellate division of the superior court affirmed. (*Espinoza*, *supra*, 232 Cal.App.4th at pp. Supp. 4, 9.) It held that Espinoza's convictions became final when his "probationary terms expired more than 10 years ago." (*Id.* at p. Supp. 8.) As such, "[t]he trial court simply did not have jurisdiction to act under section 1385." (*Ibid.*) The court concluded that Espinoza's "cases were final more than 10 years ago and there is nothing — no ongoing action or pending proceeding — which makes his cases subject to section 1385 relief." (*Ibid.*; accord *Picklesimer*, *supra*, 48 Cal.4th at p. 337 [making a similar point in the context of a defendant who filed a motion for postjudgment relief and stating " '[t]here is no statutory authority for a trial court to entertain a postjudgment motion that is unrelated to any proceeding then pending before the court' "].)

The court in *Espinoza* pinpointed the juncture at which jurisdiction under section 1385 ceases. It did so by distinguishing its finding from *Orabuena* on the ground that Orabuena "had not completed his probationary term" whereas Espinoza had. (*Espinoza*, *supra*, 232 Cal.App.4th at p. Supp. 8.) As such, the ruling from *Orabuena* that a trial court may exercise its authority under section 1385 after it suspended imposition of sentence and ordered the defendant to probation is consistent with the determination from *Espinoza* that the authority eventually expires. (Compare *Orabuena, supra*, 116 Cal.App.4th at pp. 96–98 with *Espinoza*, *supra*, 232 Cal.App.4th at pp. Supp. 7–8.) And both *Orabuena* and *Espinoza* are consistent with our holding that jurisdiction under section 1385 exists in the period before the completion of probation but ceases when that probation term runs out.

In contrast, the parties before us advocate two distinct positions, each somewhat extreme relative to our analysis. The People argue that the court's power to dismiss under section 1385 ends as soon as the court orders a grant of probation because the criminal action terminates at that time. In support of this

contention, the People rely entirely on *People v. Flores* (1974) 12 Cal.3d 85 (*Flores*). Yet *Flores* is distinguishable. In *Flores*, the trial court "apparently through inadvertence" failed to determine the degree of the crime at the time it granted probation or at any other time. (*Flores*, *supra*, 12 Cal.3d at p. 93.) The court's error led the defendant to complain that "the degree of the crime must now 'be deemed to be the lesser [second] degree.' " (*Ibid*.) Based on our reading of section 1167, we agreed. What section 1167 provides is that "[w]hen a jury trial is waived, the judge or justice before whom the trial is had shall, *at the conclusion thereof*, announce his findings upon the issues of fact . . . ." (Italics added.) In a case where imposition of sentence was suspended and the defendant was granted probation, we reasoned that section 1167 "controls the timeliness of the determination of the degree of the crime." (*Flores*, *supra*, 12 Cal.3d at p. 95.) Within that specific context, we then concluded that, since an order granting probation is a " 'final judgment' from which an appeal may be taken," "trial proceedings were to be *deemed* concluded with the granting of that 'final judgment' order." (*Ibid*., italics added.)

Seizing on this conclusion, the People contend that in *Flores* we determined "proceedings did end with a probation grant" — and this meaning of "proceeding" applies to section 683's definition of a "criminal action." This contention fails to persuade. As the People concede, we did not in *Flores* examine sections 683 or 1385. We were there analyzing section 1167, and section 1167 is concerned with the conclusion of a bench *trial*, not an entire criminal action. (Compare § 1167 [addressing findings that must be made at the conclusion of a bench trial] with § 1385 [dealing with orders dismissing actions].) As is clear from the language of section 683, a trial is only the penultimate step in a criminal action: a proceeding in which an accusation is followed by a trial, followed by punishment. (§ 683 ["The proceeding by which a party charged with a public offense is accused and

14

brought to trial and punishment, is known as a criminal action."].) Thus, that a trial may end with a probation grant does not mean that a criminal action ends there as well.

Moreover, the conclusion from *Flores* was premised on the limited finality of an order granting probation. It is true that, under section 1237, an order granting probation is deemed a "final judgment" for the purpose of taking an appeal. (§ 1237, subd. (a).) We have explained, however, that such an order "does not have the effect of a judgment for other purposes." (*People v. Superior Court* (*Giron*) (1974) 11 Cal.3d 793, 796; *Howard*, *supra*, 16 Cal.4th at p. 1087; accord *People v. Johnson* (1955) 134 Cal.App.2d 140, 142–143 ["if the probationary period expires without revocation, there can then be no formal judgment, and the order granting probation under the provisions of Penal Code, section 1237, must be considered as the final judgment" for the purpose of taking an appeal under subdivision (b) of that section].) In *Flores*, we treated the order granting probation as a final judgment for the purpose of pinning down "the timeliness of the determination of the degree of the crime" because "[t]he degree of a crime is [] an issue of fact . . . reviewable on an appeal." (*Flores*, *supra*, 12 Cal.3d at pp. 95, 94.) The rationale undergirding the result in *Flores* "must be read in light of its narrow factual context." (*Howard*, *supra*, 16 Cal.4th at p. 1092; see *People v. Parks* (2004) 118 Cal.App.4th 1, 9 [confining *Flores* to creating "an exception to the general rule stated in section 1167"]; *People v. Martinez* (1998) 62 Cal.App.4th 1454, 1461–1462 [finding *Flores* "inapposite" when the issue was not "whether the trial court's failure to fix the degree of the defendant's crime required a finding that it was of a lesser degree"].) And that factual context — the determination of the degree of a crime and its attendant statutory scheme — is not implicated here.

15

Nor are we persuaded by the People's notion that in granting probation, the Legislature "expected . . . there would be no future 'proceeding by which' appellant would be punished." On the contrary, by providing that a trial court may "at any time during the term of probation [] revoke, modify, or change its order" (§ 1203.3, subd. (a)), the Legislature clearly indicates that it expects the court sometimes to "punish" the defendant despite its original clemency in granting probation. (*Howard*, *supra*, 16 Cal.4th at p. 1092 [stating that "courts deem probation an act of clemency in lieu of punishment"].)

At the other end of the spectrum, Chavez suggests that a criminal action does not end even years after a defendant's probation is finished. In fact, he avoids committing to any determinate time at which a criminal action terminates in a case where imposition of sentence is suspended and probation is granted. He instead asserts that because the court retains fundamental jurisdiction even after the term of probation has expired, "nothing *prohibited* the court from exercising its fundamental jurisdiction to act in this instance." Chavez, however, glosses over the crucial distinction between ordinary and fundamental jurisdiction: "[e]ven when a court has fundamental jurisdiction . . . the Constitution, a statute, or relevant case law may constrain the court to act only in a particular manner, or subject to certain limitations." (*Ford*, *supra*, 61 Cal.4th at pp. 286–287.)

In this case, the statute that constrains the court is the very provision under which Chavez seeks dismissal — section 1385. Despite having fundamental jurisdiction, the court acts in excess of its jurisdiction, as conferred by section 1385, if it dismisses an action under that section that is no longer pending. (*Espinoza*, *supra*, 232 Cal.App.4th at p. Supp. 8.) Accordingly, Chavez is simply incorrect when he asserts that "there is no statute prohibiting the exercise of section 1385 authority in this case." Section 1385, by its own terms, allows a trial court to dismiss a criminal action but no more. The statute thus acts as its own

16

brake, delimiting the circumstances in which a court may act and those in which it may not. (*People v. Orin* (1975) 13 Cal.3d 937, 945 ["The trial court's power to dismiss an action under section 1385, while broad, is by no means absolute."]; *Romero*, *supra*, 13 Cal.4th at p. 530 [emphasizing that a court's exercise of discretion "must proceed in strict compliance with section 1385(a)"]; *Hernandez*, *supra*, 22 Cal.4th at p. 524 ["The only action that may be dismissed under Penal Code section 1385, subdivision (a), is a criminal action or a part thereof."]; *In re Varnell* (2003) 30 Cal.4th 1132, 1134–1135 [holding that a trial court may not "rely on section 1385 to do something other than dismiss the charges or allegations in a criminal action"].)

To the extent Chavez engages with the relevant issue and its time frame — a request for relief under section 1385 after the expiration of probation — we disagree with his suggestion that a defendant may extend the limit of section 1385 simply by inviting the court to dismiss under its authority. Chavez asserts that because fundamental jurisdiction exists, he may invoke the authority of section 1385 by submitting himself to the jurisdiction of the court. This argument misstates the law. While a defendant may be estopped to complain that a court acts in excess of its jurisdiction if he consents to such jurisdiction (*Griffin*, *supra*, 67 Cal.2d at pp. 347–349; *Bakke*, *supra*, 42 Cal.3d at pp. 89–90; *Ford*, *supra*, 61 Cal.4th at pp. 288–289), he cannot — in contravention of statute and over the People's objection — revive lapsed jurisdiction by his own unilateral act.

**B.**

Having decided the proper scope of the jurisdictional grant conferred by section 1385, we address the People's contention that this case can be resolved on the ground that section 1203.4 categorically eliminates the authority of section 1385 to grant relief to a former probationer. In the present context — where the petitioner is asking for dismissal of his convictions to avoid collateral immigration

17

consequences — the People's contention takes on special importance given the recurring issue of immigration repercussions and dismissal in the interests of justice. (See, e.g., *Kim*, supra, 45 Cal.4th at pp. 1086–1091; *Espinoza*, *supra*, 232 Cal.App.4th at pp. Supp. 3–4; *People v. Aguilar* (2014) 227 Cal.App.4th 60, 64.)

Moreover, it is far from unusual for this court to encounter the argument that particular statutory provisions repeal section 1385 by implication. While such arguments sometimes succeed despite our disfavor of repeals by implication (*Fuentes v. Workers' Comp. Appeals Bd.* (1976) 16 Cal.3d 1, 7), often they do not. (Compare *People v. Thomas* (1992) 4 Cal.4th 206, 208 [ruling that the trial courts may not continue to strike firearm use enhancements under section 1385 given section 1170.1] and *People v. Tanner* (1979) 24 Cal.3d 514, 519 [finding that section 1203.06 circumscribed the authority to dismiss under section 1385] with *People v. Fuentes* (2016) 1 Cal.5th 218, 221–222 [holding that section 186.22(g) did not eliminate a trial court's section 1385 discretion to dismiss a gang enhancement allegation] and *Romero*, *supra*, 13 Cal.4th at p. 504 [concluding that the Legislature has not withdrawn the statutory power to dismiss under section 1385 by enacting the Three Strikes law].) The appellate court here concluded that section 1203.4 abrogated section 1385 by implication. As we disfavor such implied repeals and recognize the issue may recur, we explain briefly how sections 1385 and 1203.4 are rationally harmonized.

As we have construed section 1385, a court may not exercise its dismissal power under the section after probation has terminated. Meanwhile, the text of section 1203.4 makes clear that probation must have terminated before a defendant is provided any relief. (§ 1203.4, subd. (a)(1) [stating in relevant part that "the defendant shall, at any time after the termination of the period of probation, if he or she is not then serving a sentence for any offense, on probation for any offense, or charged with the commission of any offense, be permitted by the court to"

18

enjoy the benefits enumerated therein]; *People v. Butler* (1980) 105 Cal.App.3d 585, 587 ["Section 1203.4 allows any convicted felon or misdemeanant who has been granted probation to petition to have his record expunged, after the period of probation has terminated."]; *People v. Field* (1995) 31 Cal.App.4th 1178, 1786–1787 [same].)  On the facts before us, where a defendant completed probation four years before inviting the trial court to dismiss under section 1385, sections 1203.4 and 1385 are not inconsistent.  The jurisdictional bounds of section 1385 are exceeded, and the provision does not apply.  The issue of whether section 1203.4 controls to the exclusion of section 1385 simply does not come into play.

### III.

A trial court's power to provide relief under section 1385 depends on when a request for relief is made. At any time before a criminal defendant pleads guilty, receives a suspension of sentence, begins a term of probation, or, indeed, completes it, the defendant may invite the trial court to act in the interests of justice and dismiss the action against him. By the time the defendant has completed probation, however, the trial court's power under section 1385 to grant him the relief he seeks has run out. The action against the defendant has ceased, the court may no longer impose a final judgment on him, and the court's dismissal power under section 1385 has expired.

Because Chavez completed probation four years before inviting the court to dismiss pursuant to section 1385, we find that the trial court did not have jurisdiction under that section to consider his dismissal request. On this basis, we affirm the judgment of the Court of Appeal.

**CUÉLLAR, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**CHIN, J.**
**CORRIGAN, J.**
**LIU, J.**
**KRUGER, J.**
**ROTHSCHILD, J.***

---

* Presiding Justice of the Court of Appeal, Second Appellate District, Division One, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20

*See next page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** People v. Chavez
_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted** XXX 5 Cal.App.5th 110
**Rehearing Granted**

_____

**Opinion No.** S238929
**Date Filed:** April 26, 2018
_____

**Court:** Superior
**County:** Yolo
**Judge:** Stephen L. Mock

_____

**Counsel:**

Matthew A. Siroka, under appointment by the Supreme Court, for Defendant and Appellant.

Kamala D. Harris and Xavier Becerra, Attorneys General, Dane R. Gillette and Gerald A. Engler, Chief Assistant Attorneys General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen, Janet Neeley, David Andrew Eldridge and Robert C. Nash, Deputy Attorneys General, for Plaintiff and Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Matthew A. Siroka
Law Office of Matthew A. Siroka
1000 Brannan Street, Suite 400
San Francisco, CA  94103
(415) 522-1105

Robert C. Nash
Deputy Attorney General
1300 I Street, Suite 125
Sacramento, CA  94244-2550
(916) 323-5809