Filed 2/23/21  P. v. Ochoa CA1/3
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br>v.<br><br>MANUEL MATIAS OCHOA,<br><br>        Defendant and Appellant. | A159789<br><br>(Napa County<br>Super. Ct. No. CR182855) |

Defendant Manuel Matias Ochoa pled no contest to a felony and admitted a one-year prior prison term enhancement (Pen. Code, § 667.5, subd. (b).[1])  The trial court sentenced him to a three-year split-sentence pursuant to section 1170, subdivision (h)(5)(B), suspending execution of part of his sentence for a period of mandatory supervision.  Months later, Senate Bill No. 136 went into effect, restricting prior prison term enhancements under section 667.5, subdivision (b), to sexually violent prior offenses. (Stats. 2019, ch. 590, § 1.)  After that change in the law, defendant admitted violating the terms of his mandatory supervision, and the court terminated his mandatory supervision and ordered execution of the suspended portion of his sentence.  At the sentencing hearing, the court denied defendant's motion

[1]     All further statutory references are to the Penal Code.

1

to strike the prior prison term enhancement, believing he was ineligible for relief under Senate Bill No. 136. Defendant presently claims the court erred in denying his motion to strike because his sentence was not yet final when Senate Bill No. 136 went into effect. We agree with defendant and remand the matter to the trial court with directions to grant the motion to strike the enhancement.

## FACTUAL AND PROCEDURAL BACKGROUND

In April 2017, the People charged defendant with a felony count for carrying a dirk or dagger (§ 21310), and misdemeanor counts for receiving stolen property (§ 496, subd. (a)) and attempted petty theft (§§ 664/484 subd. (a)). As to the felony count, the People further alleged a prior prison term enhancement (§ 667.5, subd. (b) ("667.5(b)")) based on a prior conviction under section 496, subdivision (a). Defendant pled no contest to the section 21310 count and admitted the enhancement allegation. In May 2017, the trial court suspended imposition of a sentence and placed defendant on probation for three years.

In May 2019, the trial court revoked probation and imposed a three-year split sentence pursuant to section 1170, subdivision (h)(5)(B), suspending execution of a portion of the sentence for a period of mandatory supervision. In December 2019, the probation officer filed a petition to revoke mandatory supervision, and the court summarily revoked it and issued a bench warrant.

Meanwhile, effective January 1, 2020, Senate Bill No. 136 (SB 136) amended section 667.5(b) to provide that prior prison term enhancements were no longer authorized unless the prior was for a sexually violent offense. (Stats. 2019, ch. 590, § 1.)

2

Later in January 2020, defendant was taken into custody, and he admitted violating the terms of his mandatory supervision at a revocation hearing. Prior to his sentencing, he filed a memorandum arguing that his section 667.5(b) enhancement should be stricken because his prior prison term was not for a sexually violent offense and, after SB 136's amendment, section 667.5(b) no longer authorized the enhancement in his case. The People filed opposition. On February 27, 2020, the trial court denied defendant's motion to strike the enhancement, reasoning that the judgment in defendant's case became final when the court initially imposed the split sentence and the time to appeal lapsed. The court then terminated mandatory supervision and ordered execution of the suspended portion of the sentence. Defendant appealed.

## DISCUSSION

Penal statutes generally operate prospectively (§ 3), but ameliorative statutory amendments apply in cases where the judgment of conviction is not yet "final." (*In re Estrada* (1965) 63 Cal.2d 740, 744 (*Estrada*).) Under *Estrada*, SB 136's amendments apply retroactively to cases that are not yet final. (*People v. Winn* (2020) 44 Cal.App.5th 859, 872–873.) Here we decide whether there was a final judgment for purposes of *Estrada* retroactivity when the court initially imposed the split sentence in defendant's case and defendant did not appeal.

Relying principally on *People v. McKenzie* (2020) 9 Cal.5th 40 (*McKenzie*), defendant contends his unappealed split sentence did not constitute a final judgment on January 1, 2020, when SB 136 took effect. In *McKenzie*, the California Supreme Court concluded that a defendant "who is placed on probation after imposition of sentence is suspended, and who does not timely appeal from the order granting probation, may take advantage of

3

ameliorative statutory amendments that take effect during a later appeal from a judgment revoking probation and imposing sentence." (*McKenzie*, at pp. 43, 45–47.)

The People disagree, analogizing the imposition of a split sentence to the situation where a court imposes but suspends execution of a sentence and places a defendant on probation. In both situations, the People contend, the court has rendered a judgment that is final for purposes of *Estrada* when no appeal is taken after the imposition of the sentence.[2] In the People's view, *McKenzie* is distinguishable because it concerned a situation where the court granted probation by suspending imposition of the sentence, rather than by imposing a sentence and suspending its execution. (*McKenzie, supra*, 9 Cal.5th at p. 43.)

To their credit, the People acknowledge that the reasoning in this division's decision in *People v. Conatser* (2020) 53 Cal.App.5th 1223 (*Conatser*), review granted November 10, 2020, S264721, compels agreement with defendant's position. The People request that if we follow *Conatser*, we remand the matter with directions that the trial court strike the enhancement.

We review the issue of the retroactive application of the statute de novo. (*In re Marriage of Fellows* (2006) 39 Cal.4th 179, 183.)

As mentioned, the defendant in *McKenzie* did not appeal from the order suspending imposition of his sentence and granting him probation. While observing that "[i]n criminal actions, the terms 'judgment' and ' "sentence" ' are generally considered 'synonymous' " (*McKenzie, supra*, 9 Cal.5th at p. 46),

---

[2] The People acknowledge the Supreme Court recently granted review to address when a judgment becomes final for purposes of *Estrada* where probation is granted and execution of the sentence is suspended.

*McKenzie* held the defendant was entitled to the benefit of ameliorative legislation that took effect during the pendency of his appeal after the revocation of probation because "the prosecution had not been 'reduced to final judgment at the time' the revisions took effect" (*id.* at pp. 43, 45). In reaching this conclusion, the Supreme Court explained: "there is no 'judgment of conviction' without a sentence [citation]. Moreover, in *Estrada*, we also referred to the cutoff point for application of ameliorative amendments as the date when the 'case[]' [citation] or 'prosecution[]' is 'reduced to final judgment' [citation]. And in [*People v. Rossi* (1976) 18 Cal.3d 295, 304] we stated that an amendatory statute applies in ' "any [criminal] *proceeding* [that], at the time of the supervening legislation, has not yet reached final disposition in the highest court authorized to review it." ' " (*McKenzie*, at p. 46.) Thus, *McKenzie* held, the defendant's criminal prosecution or proceeding had not concluded before the ameliorative legislation took effect. (*Ibid.*)

As pertinent here, *McKenzie* rejected the People's argument that the defendant was not entitled to relief because he failed to appeal from the order initially granting him probation, which is deemed a "final judgment" for purposes of section 1237. (*McKenzie*, *supra*, 9 Cal.5th at pp. 46–48.) In so doing, *McKenzie* clearly indicated that finality for purposes of conferring appellate jurisdiction under section 1237 does not necessarily correspond with finality for purposes of *Estrada*. (*McKenzie*, at pp. 47–48.) As part of its reasoning, *McKenzie* cited *People v. Chavez* (2018) 4 Cal.5th 771 (*Chavez*) with approval. (*McKenzie*, at pp. 46–48.)

*Chavez* was a case where the trial court suspended imposition of the defendant's sentence and placed him on probation. Four years after successfully completing probation, the defendant petitioned for dismissal of

5

his case under section 1385.  (*Chavez, supra*, 4 Cal.5th at p. 777.)  There the Supreme Court addressed the question:  "Given that a grant of probation is not a final judgment, *when*—if ever, for purposes of section 1385—does a judgment become final for a defendant who is granted and completes probation?"  (*Chavez*, at p. 781.)

To answer that question, *Chavez* reviewed the probation statutes and the cases interpreting them.  As *Chavez* explained, "[s]ection 1203, subdivision (a) defines 'probation' as 'the suspension of the imposition *or execution of a sentence and the order of conditional and revocable release in the community under the supervision of a probation officer*.'  Going as far back as *Stephens v. Toomey* (1959) 51 Cal.2d 864 [338 P.2d 182], we have explained that *neither forms of probation*—suspension of the imposition of sentence or suspension of the execution of sentence—*results in a final judgment*.  In a case where a court suspends imposition of sentence, it pronounces no judgment at all . . . .  [Citation.]  *In the case where the court suspends execution of sentence, the sentence constitutes 'a judgment provisional or conditional in nature.'*  [Citation.]  *The finality of the sentence 'depends on the outcome of the probationary proceeding' and 'is not a final judgment'* at the imposition of sentence and order to probation.  [Citation.]  Instead of a final judgment, the grant of probation opens the door to two separate phases for the probationer:  the period of probation and the time thereafter."  (*Chavez, supra*, 4 Cal.5th at p. 781, italics added.)

During the probation period, the court possesses the power "to revoke probation and sentence the defendant to imprisonment," or alternatively, to "dismiss a criminal action in the interests of justice."  (*Chavez, supra*, 4 Cal.5th at p. 782.)  "Once probation ends, however, a court's power is significantly attenuated," and "the court at that point may no longer revoke

6

or modify its order granting probation." (*Ibid.*) Thus, once the ability to pronounce judgment runs out—as it does at the expiration of a probation period—the court's ability to grant relief under section 1385 is lost. (*Id.* at pp. 783–784.)

Given the reasoning in *McKenzie* and *Chavez*, we cannot agree with the People that an unappealed split sentence becomes "final" for purposes of *Estrada* during a period of ongoing mandatory supervision. Indeed, the same statutes that govern probation also authorize courts to "revoke, modify, or change the conditions of the court's order" imposing a period of mandatory supervision. (§ 1203.3, subd. (a); see § 1203.2, subds. (a)–(b); *People v. Camp* (2015) 233 Cal.App.4th 461, 468–469.) Thus, courts are empowered to revoke mandatory supervision and order a defendant imprisoned for the remainder of his or her sentence (§ 15; see *Chavez*, *supra*, 4 Cal.5th at p. 782 ["court's power to punish the defendant, including by imposing imprisonment, continues during the period of probation"]), or alternatively, courts may simply terminate mandatory supervision without placing the defendant back in custody (*Camp*, at pp. 464, 470–476). The logic of *McKenzie* and *Chavez* provides strong analogous support for the conclusion that, here, defendant's criminal action was not final but still ongoing when SB 136 became effective during his period of mandatory supervision.

The People's reliance on *People v. Scott* (2014) 58 Cal.4th 1415 and *People v. Ramirez* (2008) 159 Cal.App.4th 1412 is misplaced. Neither *Scott* nor *Ramirez* mentioned *Estrada*, much less considered the issue of what constitutes a final judgment for purposes of *Estrada*.

In sum, defendant is entitled to relief because his case was ongoing and no final judgment had been reached when SB 136 went into effect.

In terms of remedy, defendant asks that we remand this case to the trial court to strike his section 667.5(b) enhancement. The People are agreeable to this disposition in the event we follow *Conatser*, which we do. Accordingly, we will order the enhancement stricken.

## DISPOSITION

The order of the trial court denying defendant's motion to strike the section 667.5(b) enhancement is reversed. The matter is remanded to the trial court with directions to enter a new order granting defendant's motion to strike the enhancement.

_____
Fujisaki, Acting P.J.

WE CONCUR:


_____
Petrou, J.


_____
Wiseman, J.*

---

* Retired Associate Justice of the Court of Appeal, Fifth Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

9