CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DANAE MARIE RODRIGUEZ,<br><br>    Defendant and Appellant. | D078183<br><br><br>(Super. Ct. No. SCD276622) |

APPEAL from an order of the Superior Court of San Diego County, Howard H. Shore, Judge.  Affirmed.

William D. Farber, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Steve Oetting and Anthony Da Silva, Deputy Attorneys General, for Plaintiff and Respondent.

INTRODUCTION

Two years after she pled guilty to felony animal cruelty (Pen. Code, § 597, subd. (a)),[1] Danae Marie Rodriguez requested pretrial mental health diversion under section 1001.36. The trial court denied her request as untimely because it was not presented until after her conviction by guilty plea. Section 1001.36, subdivision (c), defines pretrial diversion as postponement of prosecution "at any point in the judicial process . . . *until adjudication*" (italics added) and the trial court interpreted the term "adjudication" to mean an adjudication of guilt, whether by jury conviction or a plea of guilty. We agree with the trial court's interpretation and accordingly, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 27, 2018, Rodriguez was charged in a felony complaint with one count of animal cruelty (§ 597, subd. (a)) and with personally using a dangerous and deadly weapon in the commission of the offense (§ 1192.7, subd. (c)(23)). On June 27, 2018, pretrial mental health diversion under section 1001.36 went into effect. (Stats. 2018, ch. 34, § 24.) On July 2, 2018, defense counsel declared a doubt as to Rodriguez's mental competency and criminal proceedings were suspended pursuant to section 1368. After Rodriguez was deemed competent to stand trial, criminal proceedings were reinstated on August 31, 2018.

On September 24, 2018, pursuant to a negotiated plea agreement, Rodriguez pled guilty to felony animal cruelty and admitted the deadly weapon allegation. As the factual basis for her plea, she admitted that on

---

[1]    Undesignated statutory references are to the Penal Code.

April 25, 2018, she "maliciously [and] intentionally wounded an animal and that [she] personally used a dangerous weapon, to wit: a knife." In exchange for her plea and admission, Rodriguez was promised a grant of three years of formal probation.

At sentencing on November 6, 2018, Rodriguez requested that the trial court, in accordance with the terms of the plea agreement, impose 48 days of custody with credit for time served and three years of formal probation. Rodriguez urged the court to impose a noncustodial sentence so she could continue with ongoing mental health treatment for a diagnosed bipolar disorder. The court suspended imposition of sentence and placed Rodriguez on three years of formal probation with credit for time served, and terms and conditions that she take her prescribed psychotropic medications and complete psychiatric treatment and cognitive behavior counseling programs as directed by the probation officer.

Two years later, on September 25, 2020, Rodriguez moved for pretrial mental health diversion pursuant to section 1001.36, or alternatively, for reduction of her felony conviction to a misdemeanor pursuant to section 17, subdivision (b).

In support of her request for mental health diversion, Rodriguez argued that "[a] court may grant [pretrial mental health] diversion even after a criminal conviction as long as the conviction is not final on appeal." She asserted that she remained eligible for diversionary relief under *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*), in which the California Supreme Court held that mental health diversion was available retroactively under the rule of *In re Estrada* (1965) 63 Cal.2d 740 (*Estrada*) to defendants whose judgments were not final when section 1001.36 went into effect. Rodriguez urged that under *People v. McKenzie* (2020) 9 Cal.5th 40 and *People v. Chavez*

3

(2018) 4 Cal.5th 771, the trial court retained authority to grant diversion as late as November 5, 2021, when her three-year period of probation would expire.

Rodriguez argued that she satisfied all of the criteria in section 1001.36, subdivision (b)(1) that support granting mental health diversion, and asked the court "to divert this criminal case so that she can receive mental health treatment and have her record be clean."[2] She requested that the diversionary period end "on November 4, 2020, two years from the date of her conviction," and just 12 days after the scheduled hearing date of October 23, 2020.

The prosecution opposed Rodriguez's request for mental health diversion because, among other reasons, she failed to meet the requirement that the defendant not pose "an unreasonable risk of danger to public safety." (§ 1001.36, subd. (b)(1)(F).) It argued the offense conduct was "alarming and dangerous"—Rodriguez admitted that she stabbed her pet dog with a knife—and created cause for concern that Rodriguez would pose an unreasonable public safety risk.

At the October 23, 2020 hearing on Rodriguez's request for mental health diversion, the trial court asked the prosecutor why her opposition brief had not addressed "the legal issue of whether or not mental health diversion is available to somebody who has already pled guilty." The prosecutor responded that she believed Rodriguez was "legally eligible for pretrial mental health diversion" because "the judgment is not final."

---

[2] Section 1001.36, subdivision (e), authorizes dismissal of criminal charges upon successful completion of mental health diversion.

The trial court rejected the prosecutor's concession. It ruled that Rodriguez's eligibility for mental health diversion was governed not by *Frahs*, which "discussed retroactivity," but rather by section 1001.36, subdivision (c), and in particular the statutory phrase "until adjudication." (See § 1001.36, subd. (c) ["As used in this chapter, 'pretrial diversion' means the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment. . . ."].) The trial court observed that appellate courts had thus far given "absolutely no guidance" on the interpretation of this phrase. Interpreting the statute for itself, the trial court reasoned that the Legislature would not "title the statute pretrial diversion if [it] meant it to apply . . . up to sentence or completion of probation." It concluded that the "term adjudication refers to either a conviction or a plea of guilty." The court found that while Rodriguez would have been eligible to seek diversion "within the 60-day period" following "the conviction or the plea," she was no longer eligible two years later.

The trial court thus denied Rodriguez's motion as untimely. It refrained from considering whether she met the criteria for mental health diversion, explaining it did not want to "muddy the waters." However, it granted her alternative request and reduced her conviction to a misdemeanor pursuant to section 17, subdivision (b), and modified her remaining period of formal probation to summary probation.

## DISCUSSION

Rodriguez argues the trial court erred in denying her motion for mental health diversion as untimely. On appeal, she concedes that her eligibility for diversion is a matter governed by section 1001.36. She argues, however, that

5

contrary to the trial court's conclusion that the statutory phrase "until adjudication" means until "a conviction or a plea of guilty," the phrase should instead be interpreted to allow a request for diversion "at any stage of the proceedings." She seeks a conditional limited remand with instructions to the trial court to conduct a mental health diversion eligibility hearing, the remedy approved of in *Frahs*. (See *Frahs*, *supra*, 9 Cal.5th at p. 637.)

We find no error in the trial court's ruling. The court correctly discerned at the outset that Rodriguez's eligibility for mental health diversion was governed by the diversion statute and not by *Frahs*. The question in *Frahs* was whether a defendant whose case was on appeal when section 1001.36 took effect could seek mental health diversion. (*Frahs*, *supra*, 9 Cal.5th at pp. 624–625.) As another court has explained, resolution of this question "turned on whether the Legislature, in enacting section 1001.36, had ' "clearly signal[ed] its intent" ' " to overcome the presumption of *Estrada*, *supra*, 63 Cal.2d 740, "that statutes having an ameliorative effect in criminal cases apply retroactively to convictions that are not yet final." (*People v. Graham* (2021) 64 Cal.App.5th 827, 834 (*Graham*).) "*Frahs* ruled that the ' "until adjudication" ' language in section 1001.36 did not constitute that 'clear' signaling (*Frahs*, at p. 633), such that defendants whose convictions were in the 'pipeline' of direct appellate review when section 1001.36 took effect could still take advantage of the statute. But *Frahs* was careful to limit its analysis to the availability of section 1001.36 to these pipeline defendants, and to note that its holding involved a 'quite different' question from how the 'statute normally will apply going forward' as to the defendants who had had the opportunity [to] seek pretrial diversion from the very beginning." (*Ibid.*, quoting *Frahs*, at p. 633.)

6

Rodriguez was not one of these " 'pipeline defendants.' " (*Graham, supra,* 64 Cal.App.5th at p. 834.) Section 1001.36 took effect on June 27, 2018, while her case was still pending in the trial court, months before she pled guilty and was placed on probation. Thus, Rodriguez had the opportunity to seek mental health diversion prospectively, under the statute as it operated "[i]n the ordinary course[.]" (*Frahs, supra,* 9 Cal.5th at p. 632.) Accordingly, Rodriguez's eligibility for diversion was not governed by *Frahs*.[3]

The trial court thus correctly recognized that Rodriguez's eligibility for mental health diversion program had to be determined under the statute, and it appropriately focused on section 1001.36, subdivision (c), as containing the pertinent limitation. At the time of the October 23, 2020 hearing on the motion, the trial court found itself without appellate guidance on the meaning of "until adjudication." Since then, however, this phrase has been interpreted in three decisions: *People v. Curry* (2021) 62 Cal.App.5th 314 (*Curry*), review granted July 14, 2021, S267394; *People v. Braden* (2021) 63 Cal.App.5th 330 (*Braden*), review granted July 14, 2021, S268925; and *Graham, supra,* 64 Cal.App.5th 827.

Of these, we find *Graham* to be the most persuasive. *Graham* held that a request for pretrial diversion under section 1001.36 "is timely only if it is made prior to the jury's guilty verdict." (*Graham, supra,* 64 Cal.App.5th at p. 833.) It derived its conclusion from the plain meaning of the statutory text. It reasoned that " 'adjudication' typically refers to an adjudication of guilt—

---

[3]    For the same reason, our Supreme Court's recent decision in *People v. Esquivel* (2021) 11 Cal.5th 671, 680, where the court considered whether the ameliorative benefits of a new statute applied retroactively to a defendant on appeal from a sentence executed after revocation of probation, is inapplicable.

whether by plea or by jury verdict" and that the legislatively-chosen words " 'pretrial diversion' " were not inconsequential. (*Ibid.*) "After all, 'pretrial' exists in contradistinction to posttrial, and 'pretrial *diversion*' connotes a diversion away from trial. One cannot divert a river *after* the point at which it has reached the sea." (*Ibid.*)

The *Graham* court found this interpretation consistent with the "tripartite purposes" of section 1001.36, which were to " 'mitigate the . . . entry and reentry into the criminal justice system' " of individuals with mental disorders; to allow for " 'local discretion and flexibility . . . in the development and implementation of diversion for individuals . . . across a continuum of care settings' "; and to provide diversion " 'that meets the unique mental health treatment and support needs of individuals with mental disorders.' " (*Graham*, *supra*, 64 Cal.App.5th at p. 833.) It further observed that permitting a defendant to seek pretrial diversion through entry of judgment would invite "the inefficient use of finite judicial resources" and would potentially turn trial into a " 'read through' " that could be rendered "retroactively moot should pretrial diversion be requested following a guilty verdict." (*Id.* at p. 834.)

We agree with this analysis and with the court's holding that the phrase "until adjudication" limits eligibility for diversion to the period before the defendant is convicted. Although the *Graham* court was concerned with a conviction by jury, "there is 'no distinction between an adjudication of guilt based on a plea of guilt and that predicated on a trial on the merits.' " (*In re Harris* (1989) 49 Cal.3d 131, 135.) Therefore, consistent with *Graham*, we conclude that a request for mental health diversion is untimely under section 1001.36, subdivision (c), if presented after the defendant's conviction by guilty plea.

8

In *Braden*, the Court of Appeal went slightly further and held that
"'adjudication'" referred to "the process of trial or plea." (*Braden*, *supra*, 63
Cal.App.5th at p. 337.) It thus concluded that a defendant could not seek
mental health diversion "after his trial begins." (*Id.* at p. 333.) The case
before us, however, does not call for us to define the point when diversion
becomes unavailable quite so finely. (See *Graham*, *supra*, 64 Cal.App.5th at
p. 829 [appellate court had "no occasion to go so far as [*Braden*, *supra,* 63
Cal.App.5th at p. 333] (diversion may not be sought once trial begins)"].)

Most of Rodriguez's arguments in her opening brief on appeal seem to
have been copied from *Curry*, *supra*, 62 Cal.App.5th 314, although without
attribution to *Curry*. Rodriguez presumably wishes for us to follow *Curry*, in
which the Third District Court of Appeal held that "a defendant may ask the
trial court for mental health diversion until sentencing and entry of
judgment." (*Id.* at p. 325.) In reaching this conclusion, the *Curry* court relied
heavily on *Frahs*. And yet in *Frahs*, our high court took pains to avoid
defining "until adjudication," and differentiated the retroactive availability of
mental health diversion under *Estrada* from "how the statute will generally
operate when a case comes before the trial court after section 1001.36's
enactment." (*Frahs*, *supra*, 9 Cal.5th at pp. 632, 633, fn. 3.) The *Curry* court
downplayed these aspects of *Frahs* as differences in "procedural posture" and
proceeded to attempt to divine meaning from dicta in the *Frahs* opinion. (See
*Curry*, at pp. 322, 323.) After finding the dicta equivocal, the *Curry* court
nevertheless concluded the "balance of dicta" favored its conclusion. (*Id.* at
pp. 323–324.) The court also reasoned that the "overall statutory scheme" of
section 1001.36, which it viewed as investing trial courts with "broad
discretion" in deciding when and whether to grant diversion, supported an
expansive interpretation of section 1001.36. (*Curry*, at pp. 324–325.)

9

Both *Graham* and *Braden* found *Curry*'s reliance on dicta from *Frahs* problematic, and so do we. (See *Graham, supra,* 64 Cal.App.5th at p. 834; *Braden, supra,* 63 Cal.App.5th at p. 341.) We also agree with *Graham* that the broad statutory scheme observed in *Curry* was not, of itself, sufficient to "countermand . . . the otherwise clear intent of the Legislature to require pretrial diversion to be sought before a verdict." (*Graham,* at p. 835.) Accordingly, like the *Graham* and *Braden* courts, we decline to follow *Curry*.

We further observe that *Curry*'s interpretation of section 1001.36 as allowing a defendant to seek mental health diversion up through "sentencing and entry of judgment" (*Curry, supra,* 62 Cal.App.5th at p. 325), applied to a case like this in which probation was granted with imposition of sentence suspended, may lead to unintended results. The defense in this case argued that since Rodriguez was never sentenced, she never suffered a final judgment, and would remain eligible for diversion until her last day of probation. Rather than seeking permission for Rodriguez to participate in a full program of mental health diversion, however, the defense asked for her to be placed on diversion only to have her case immediately dismissed. We do not believe the Legislature intended the statute to operate in this way.

The statutory scheme contemplates participation in a mental health program approved by the court for a period of up to two years, with regular progress reports to "the court, the defense, and the prosecutor[.]" (§ 1001.36, subds. (c)(1), (c)(2), (c)(3).) Only "at the end of the period of diversion," after performing satisfactorily, does the defendant become eligible for dismissal of the "criminal charges that were the subject of the criminal proceedings at the time of the initial diversion." (§ 1001.36, subd. (e).) The court may then "conclude that the defendant has performed satisfactorily if," among other things, "the defendant has substantially complied with the requirements of

diversion[.]" (*Ibid.*) Section 1001.36 is not just a dismissal statute; rather, it presents dismissal as an incentive and reward for successful completion of these legislatively-prescribed processes. And since this reward becomes available only "at the end of the period of diversion," there must necessarily be a "period" of time during which the defendant actually participates in diversion before the defendant can become eligible for dismissal. (*Ibid.*) The defendant who does not seek diversion until her term of probation is drawing to a close will almost certainly be unable to comply with this requirement. And a defendant—like Rodriguez—who asks for diversion and dismissal all at once ignores this statutory mandate.

For all these reasons, we follow *Graham* and conclude, as it did, that "until adjudication" means until adjudication of guilt, whether by a jury (as in *Graham*) or by guilty plea (as here). Accordingly, the trial court properly denied Rodriguez's motion, filed some two years after she pled guilty, as untimely.[4]

---

[4] Although we agree with most of the trial court's analysis, we disagree with its suggestion that Rodriguez's request for mental health diversion might have been timely if brought within 60 days after she pled guilty. At this point, the court veered from its initial reliance on the text of section 1001.36 and started borrowing from the retroactivity analysis of *Frahs*. However, as we have explained, Rodriguez's eligibility for diversion was not governed by *Frahs*. Thus, the trial court did not need to consider the "final judgment" rule in deciding whether her motion was timely.

## DISPOSITION

The trial court order denying Rodriguez's motion for mental health diversion is affirmed.

DO, J.

WE CONCUR:

HALLER, Acting P. J.

GUERRERO, J.