Filed 1/29/21  P. v. Castorena CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT
## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>VICTOR ANTHONY CASTORENA,<br><br>    Defendant and Appellant. | E074517, E075013<br><br>(Super.Ct.No. SWF1601174)<br><br>OPINION |

CONSOLIDATED APPEALS from the Superior Court of Riverside County, Stephen J. Gallon, Judge.  Affirmed as modified.

Jeffrey S. Kross, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Michael Pulos, and Joy Utomi, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant and appellant Victor Anthony Castorena appeals from the trial court's order sentencing defendant on October 1, 2019 (case No. E075013), and the trial court's order denying defendant's motion to recall his sentence (case No. E074517).  On August

1

6, 2020, we granted defendant's unopposed motion to consolidate the appeals with case No. E074517 being designated the master file. We have also granted defendant's motion for calendar preference.

## FACTUAL AND PROCEDURAL HISTORY

### A.     PROCEDURAL HISTORY

On July 21, 2016, in case No. SWF1601174 (current case) defendant pled guilty in Riverside County to felony theft, driving or taking a vehicle with a prior theft-related conviction under Penal Code[1] section 666.5, subdivision (a) (count 1); and misdemeanor resisting arrest under section 148, subdivision (a) (count 3). Defendant also admitted five prison priors under section 667.5, subdivision (b). Thereafter, the trial court sentenced defendant to a split sentence of eight years as follows:  four years in custody and four years under mandatory supervision. The sentence consisted of the midterm of three years in county jail for count 1, a concurrent 180-day jail term for count 3, and five consecutive one-year terms for the section 667.5, subdivision (b), prison priors. Defendant did not appeal the judgment.

On February 11, 2019, defendant admitted to violating his mandatory supervision. The court reinstated mandatory supervision and ordered defendant to serve 232 days in jail with an additional 1,129 days of mandatory supervision. On August 22, 2019, defendant admitted another violation of mandatory supervision.

---

[1] All statutory references are to the Penal Code unless otherwise specified.

2

On October 1, 2019, in an unrelated case, case No. 1907524, defendant pled guilty to receiving a stolen vehicle with a qualifying prior. The court sentenced defendant to one year in county jail in the unrelated case. At the same hearing, defendant admitted a new violation of his mandatory supervision in the current case. Therefore, the court terminated defendant's mandatory supervision and imposed 971 days to be served in jail. The sentence in the unrelated case was ordered to run consecutive to the sentence in the current case.

On January 6, 2020, defendant filed a request to recall his sentence pursuant to the change in law affecting section 667.5, subdivision (b), prison priors. On January 10, 2020, the court denied defendant's request because the sentence occurred "outside of the period when those prison priors would come into question."

On January 13, 2020, defendant filed a timely notice of appeal on the denial of his request to recall his sentence under section 667.5, subdivision (b), in case No. E074517 (first appeal).

On February 18, 2020, in a separate proceeding (case No. E074703), defendant filed "a petition for writ of habeas corpus to establish the constructive timely filing of a notice of appeal on petitioner's behalf." On June 2, 2020, we granted the petition "and the notice of appeal received by the trial court clerk on January 24, 2020, from the judgment entered on October 1, 2019, [was] CONSTRUED to have been timely filed." The appeal was designated case No. E075013.

On July 6, 2020, defense counsel filed a motion to consolidate the two appeals, case No. E074517 (first appeal) and case No. E075013 (second appeal). Counsel stated

that both appeals "arose from the same proceedings below and both seek the retroactive application of the ameliorative benefits of Senate Bill No. 136 [(Sen. No. 136)] to his non-final judgment in Riverside County Superior Court case number SWF 1601174." On August 7, 2020, we granted defendant's motion to consolidate and consolidated the appeals, with case No. E074517 designated as the master file. In sum, the first appeal is a direct appeal from the trial court's ruling on January 10, 2020. On January 24, 2020, defendant filed the second appeal, an untimely notice of appeal from the October 1, 2019, judgment. On February 18, 2020, defendant filed a petition for writ of habeas to have the notice of appeal deemed constructively filed earlier. On April 17, 2020, we ordered defendant's notice of appeal to have been constructively filed timely from the October 1, 2019, judgment—the second appeal. The issue in both appeals is identical: Whether Sen. No. 136 applies retroactively to defendant's judgment in the trial court. For the reasons set forth *post*, we find that Sen. No. 136 applies retroactively and the five, one-year enhancements imposed pursuant to section 667.5, subdivision (b), should be stricken.

B.    FACTUAL HISTORY

At the plea hearing, defendant admitted that he unlawfully drove a 2007 Ford vehicle without the owner's permission and with the intent to permanently deprive the owner of the vehicle.

**DISCUSSION**

In both appeals, defendant contends that under Sen. No. 136, his "case should be remanded for resentencing with directions that the court strike his section 667.5,

4

subdivision (b) enhancements."  (Caps. & boldface omitted.)  The People argue that, although defendant's claim is cognizable on appeal, "he is not entitled to relief under [Sen. No. 136] because his judgment was final before the measure took effect."  We agree with both parties that defendant's claim is cognizable on appeal.  The issue on appeal, therefore, is whether defendant is entitled to relief under Sen. No. 136.

Here, as provided *ante*, the trial court imposed a split sentence on defendant in July 2016.  Defendant admitted violating the terms of his mandatory supervision in February and August 2019.  Then on January 6, 2020, after Sen. No. 136 went into effect, defense counsel filed a request to recall defendant's sentence.  The court denied the request.

"This case involves the intersection of the Criminal Justice Realignment Act [(Realignment Act)] and the retroactive application of ameliorative statutes pursuant to *In re Estrada* (1965) 63 Cal.2d 740 . . . (*Estrada*).  Under the Realignment Act, a trial court has discretion to impose a 'split sentence' consisting of a term in county jail followed by a period of mandatory supervision.  The court fashions a split sentence by suspending execution of the latter portion of the defendant's sentence and releasing them subject to the probation department's supervision.  If the defendant violates the terms of supervision, the court may revoke it and order execution of the suspended portion of the

sentence." (*People v. Martinez* (2020) 54 Cal.App. 5th 885, 889 (*Martinez*), review granted Nov. 10, 2020, S264848.[2])

Recently, on November 13, 2020, the sixth appellate district addressed an almost identical issue as in this case: "Does suspending execution of sentence to place a defendant on mandatory supervision constitute a final judgment for purposes of retroactively applying an ameliorative statutory amendment?" (*People v. Lopez* (2020) 57 Cal.App.5th 409, 413 (*Lopez*).) In *Lopez,* the court concluded that "there is no final judgment in that situation because sentencing is not actually complete. In other words, a defendant who remains on mandatory supervision is not yet subject to a final judgment." (*Ibid.*) We agree with *Lopez.*

In *Lopez*, the defendant pled guilty to transporting a controlled substance under Health and Safety Code section 11352, subdivision (a), in 2011. The court granted probation, which the defendant violated in 2014. As a result of the probation violation, the trial court terminated probation and imposed an eight-month sentence. Thereafter, under Penal Code section 1170, subdivision (h)(5)(B), the trial court suspended execution of the sentence and placed the defendant on mandatory supervision. (*Lopez*, *supra*, 57 Cal.App.5th at p. 412.)

---

[2] Cases involving when a judgment becomes final for purposes of *Estrada* retroactivity where probation is granted and execution of sentence is suspended are before the California Supreme Court. (*People v. Esquivel* (Mar. 26, 2020, B294024) 2020 Cal.App.Unpub. LEXIS 1977 [nonpub. opn.], review granted August 12, 2020, S262551; and *Martinez*, *supra*, 54 Cal.App.5th 885.)

In February 2016, the defendant violated the terms of mandatory supervision. The court increased the sentence to two years but again suspended execution to reinstate mandatory supervision for the entire term. In October 2016, the defendant violated mandatory supervision by testing positive for marijuana and failing to report to probation. (*Lopez*, *supra*, 57 Cal.App.5th at p. 412.)

In 2018, the defendant appeared before the court via a bench warrant. At that time, he moved to vacate his conviction based on an amendment to the Health and Safety Code after the time he pled guilty: Health and Safety Code section 11352 was amended to make transportation of a controlled substance a felony only where the transportation was for the purpose of sale, not personal use. The trial court denied the defendant's request "finding the statutory amendment inapplicable because defendant's judgment was final." (*Lopez*, *supra*, 57 Cal.App.5th at p. 412.)

On appeal, the Sixth District stated that "[s]ince defendant's conviction is based on conduct that occurred in 2011, well before the amendment's January 1, 2014 effective date, the amended statute applies here only if it can be applied retroactively. When a statute is amended to reduce the punishment for a criminal act, it is presumed that the Legislature intended the lighter penalty to apply retroactively 'to every case to which it constitutionally could apply.' [Citation.] A statute can be constitutionally applied to acts committed before its passage so long as the judgment of conviction is not final. [Citation.] A judgment becomes final when it has reached final disposition in the highest court authorized to review it." (*Lopez*, *supra*, 57 Cal.App.5th at p. 413.)

The *Lopez* court recognized that in criminal actions, "the terms 'judgment' and 'sentence' are synonymous. [Citation.] There can be no judgment without a sentence." (*Lopez, supra*, 57 Cal.App.5th at p. 413.) The court then went on to state that "[a] grant of probation is not a sentence and final judgment for purposes of retroactivity: in a case where the court suspends imposition of sentence to place the defendant on probation, there is no final judgment. And where the court imposes sentence but suspends its execution, that sentence constitutes only a provisional or conditional judgment, the finality of which depends on the outcome of the probationary period." (*Lopez, supra*, 57 Cal.App.5th at p. 414.)

The facts in this case are similar to the facts in *Lopez*. Here, the trial court imposed a split sentence after defendant pled guilty. Three years later, in 2019, defendant admitted violating his mandatory supervision. The court ordered defendant to serve time in jail and imposed an additional 1,129 days under mandatory supervision. When defendant again violated his mandatory supervision three months later, the court then sentenced defendant the balance of 971 days of mandatory supervision to be served in county jail. On appeal, defendant contends that an ameliorative statute that was not in effect at the time he pled guilty—Sen. No. 136—should be given retroactive effect since the imposition of the split sentence in 2016 was not a final judgment for purposes of *Estrada* retroactivity. We agree with the *Lopez* court that defendant's sentence was not yet final.

Similar to this case, in *Lopez*, "the trial court imposed sentence and suspended its execution to place defendant on mandatory supervision. Mandatory supervision, a

8

creature of the Criminal Justice Realignment Act of 2011 [citation], is governed by Penal Code sections 1170, subdivision (h)(5) and 1203.3, subdivision (a). [Citation.] Section 1170, subdivision (h)(5)(A) directs that when imposing sentence in eligible cases, the trial court 'shall suspend execution of a concluding portion of the term for a period selected at the court's discretion,' the mandatory supervision period. At the same time— and significantly—section 1203.3, subdivision (a) expressly confers on the trial court the 'authority at any time during the term of mandatory supervision . . . to revoke, modify, or change the conditions of the court's order suspending the execution of the concluding portion of the supervised person's term.' Although the statutory scheme uses the language 'suspending execution of sentence,' the court retains complete discretion to modify the previously imposed sentence." (*Lopez, supra*, 57 Cal.App.5th at p. 414.)

The *Lopez* court went on to state that the trial court understood the extent of its discretion because it modified the defendant's sentence twice after mandatory supervision violations. Here, as noted *ante*, the trial court understood its discretion because it also modified defendant's sentence twice after mandatory supervision violations. "That flexibility is expressly contemplated in the statutes that created mandatory supervision. It is also inconsistent with the proposition that there was a final judgment, which could not be altered." (*Lopez, supra*, 57 Cal.App.5th at p. 414.)

We agree with the *Lopez* court that "[w]e see the trial court's preserved discretion as dispositive. Given the court's complete authority to 'revoke, modify, or change' its previous sentence [citation], the sentencing process cannot fairly be described as finished when execution of a sentence is suspended to place a defendant on mandatory

supervision. To the extent there is a judgment at that point, it is provisional or conditional in nature and therefore does not prevent retroactive application of an ameliorative statute." (*Lopez*, *supra*, 57 Cal.App.5th at p. 414.) Therefore, as of January 1, 2020, the effective date of Sen. No. 136, the judgment in defendant's case was not final.

Moreover, we note that in *Lopez*, the court recognized the second appellate district addressed a similar issue in *Martinez*, *supra*, 54 Cal.App.5th 885. In *Martinez*, "the defendant was entitled to retroactive application of an ameliorative statute on appeal from an order revoking mandatory supervision and executing a prison sentence. Focusing on the issue of finality, the *Martinez* court reasoned that a judgment exists when mandatory supervision is revoked and a prison sentence executed, *but the judgment becomes final only when appellate review of the revocation is complete*. [Citation.] In that case the same result [was] obtained: An ameliorative statute was applied retroactively when constitutionally permissible." (*Lopez*, *supra*, 57 Cal.App.5th at p. 415, italics added.)

In reaching its decision, the *Martinez* court relied on *People v. McKenzie* (2020) 9 Cal.5th 40 (*McKenzie*), a recent Supreme Court decision. In *McKenzie*, the defendant pleaded guilty to certain drug-related offenses and admitted previous felony drug-related convictions for purposes of sentence enhancements pursuant to former Health and Safety Code section 11370.2. (*McKenzie*, at p. 43.) The trial court suspended imposition of sentence and granted the defendant five years of probation. (*Ibid*.) After the defendant violated the terms of his probation, the trial court revoked probation and imposed a prison sentence, including the Health and Safety Code section 11370.2 enhancements. The

10

defendant appealed but before the appeal was resolved, "the governor signed Senate Bill No. 180." (*McKenzie*, at p. 43.) The Supreme Court granted review to decide whether the defendant was entitled to the retroactive benefit of Senate Bill No. 180 and concluded that he was. (*Id.* at pp. 44-45.) In so doing, *McKenzie* rejected the argument that the original order granting probation was a "final judgment" for the purposes of *Estrada*.

"Initially, the People err by assuming that when we used the phrase 'judgment of conviction' in *Estrada*, *supra*, 63 Cal.2d at page 744, . . ., we were referring only to 'underlying' convictions and enhancement findings, exclusive of sentence. In criminal actions, the terms 'judgment' and ' "sentence" ' are generally considered 'synonymous' [citation], and there is no 'judgment of conviction' without a sentence [citation]. Moreover, in *Estrada*, we also referred to the cut-off point for application of ameliorative amendments as the date when the 'case[]' [citation] or 'prosecution[]' is 'reduced to final judgment' [citation]. And in [*People v.*] *Rossi* [(1976)] 18 Cal.3rd [295,] 304, we stated that an amendatory statute applies in ' "any [criminal] *proceeding* [that], at the time of the supervening legislation, has not yet reached final disposition in the highest court authorized to review it.' " . . . It cannot be said that this criminal prosecution or proceeding concluded before the ameliorative legislation took effect." (*McKenzie*, *supra*, 9 Cal.5th at p. 46.)

*McKenzie* went on to explain that its conclusion was consistent with *People v. Chavez* (2018) 4 Cal.5th 771 (*Chavez*), which held that the trial court could no longer dismiss a criminal action in furtherance of justice under section 1385 after the defendant had successfully completed probation. In particular, *McKenzie* relied on the following

11

discussion from *Chavez*:  "Given that a grant of probation is not a final judgment, *when*— if ever, for purposes of section 1385—does a judgment become final for a defendant who is granted and completes probation?"

"The answer lies in the probation statutes and our cases interpreting them.  Section 1203, subdivision (a) defines 'probation' as 'the suspension of the imposition or execution of a sentence and the order of conditional and revocable release in the community under the supervision of a probation officer.'  Going as far back as *Stephens v. Toomey* (1959) 51 Cal.2d 864, we have explained that neither forms of probation— suspension of the imposition of sentence or suspension of the execution of sentence— results in a final judgment.  In a case where a court suspends imposition of sentence, it pronounces no judgment at all, and a defendant is placed on probation with 'no judgment pending against [him].'  [Citation.]  In the case where the court suspends execution of sentence, the sentence constitutes 'a judgment provisional or conditional in nature.'  [Citation.]  The finality of the sentence 'depends on the outcome of the probationary proceeding' and 'is not a final judgment' at the imposition of sentence and order to probation.  [Citation.]  Instead of a final judgment, the grant of probation opens the door to two separate phases for the probationer:  the period of probation and the time thereafter."  (*Chavez*, *supra*, 4 Cal.5th at p. 781; see *McKenzie*, *supra*, 9 Cal.5th at pp. 47-48.)

The *Martinez* court recognized that *McKenzie* involved probation, not mandatory supervision.  However, the court stated, "we see no reason to depart from its principles in a case involving mandatory supervision.  Mandatory supervision is 'akin to probation.'

12

[Citation.] During the supervision period, the defendant is 'supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation,' including those used to revoke or modify the terms of supervision. [Citations.] The applicability of these procedures and the myriad outcomes they permit demonstrate that mandatory supervision, like probation, is conditional or provisional in nature." (*Martinez*, *supra*, 54 Cal.App.5th at p. 893.)

The People attempt to distinguish the Supreme Court decision in *McKenzie* from the case at hand because the defendant in *McKenzie* "was placed on probation with a suspended imposition of sentence. [Citation.] The court emphasized that finality includes both the conviction and the sentence. [Citation.] Since the defendant had *not* been sentenced when probation was imposed, there was no final judgment at the time. [Citation.] Therefore, the California Supreme Court concluded that the defendant's judgment was not final for purposes of *Estrada* on the grounds that the time for petitioning for certiorari had not lapsed at the time that the ameliorative sentencing provisions were enacted." The court in *Martinez* addressed this exact argument and disagreed.

"That *McKenzie* considered a case where imposition of sentence was suspended, while mandatory supervision involves suspension of the execution of sentence, does not change our conclusion. *McKenzie* relied heavily on *Chavez*, which explained the differences between the two forms of probation. The *Chavez* court stated that '[i]n the case where the court suspends execution of sentence, the . . . finality of the sentence "depends on the outcome of the probationary proceeding" and "is not a final judgment." '

13

[Citation.] Instead, 'the grant of probation opens the door to two separate phases for the probationer: the period of probation and the time thereafter.' [Citation.] During the former, 'the court retains the power to revoke probation and sentence the defendant to imprisonment.' [Citation.] If the court exercises that power—as it did in the proceedings below—the judgment then has 'full force and effect.' [Citation.] It will become final once the means for setting it aside on direct appeal have been exhausted." (*Martinez*, *supra*, 54 Cal.App.5th at p. 893.) We agree with *Martinez* that *McKenzie*'s logic applies to the split sentence at issue in this case.

Moreover, the First District recently explained the following: "Based on *Chavez*, cited with approval in *McKenzie*, we conclude the split sentence 'constitutes "a judgment provisional or conditional in nature." [Citation.] The finality of the sentence "depends on the outcome of the [mandatory supervision period] . . ." and "is not a final judgment" at the imposition of' the split sentence. [Citation.] 'Instead of a final judgment,' the split sentence 'opens the door to two separate phases' for defendant, the time spent in the county jail and the period of mandatory supervision. [Citation.] During mandatory supervision, 'the court retains the power to' revoke or modify the mandatory supervision and sentence defendant to imprisonment in the county jail. [Citation.] Therefore, 'the "criminal action"—and thus the trial court's jurisdiction to impose a final judgment— "continues into and throughout the period of [mandatory supervision]" and expires only "when th[e] [mandatory supervision] period ends." ' [Citation.] Accordingly, defendant is entitled to retroactive application of the new law as '[i]t cannot be said that this

14

criminal prosecution or proceeding concluded before the ameliorative legislation took effect.' " (*People v. Conatser* (2020) 53 Cal.App.5th 1223, 1229.)[3]

"We conclude by noting our decision is consistent with 'the "inevitable inference" that the Legislature, having "determined that its former penalty was too severe," "must have intended" that the ameliorative statutory change "should apply to every case to which it constitutionally could apply." [Citation.] A contrary conclusion . . . would "serve no purpose other than to satisfy a desire for vengeance," and would have to rest on the impermissible view "that the Legislature was motivated by [such] a desire." [Citation.] Thus, applying those revisions in this case is fully consistent with *Estrada*.' (*McKenzie*, *supra*, 9 Cal.5th at p. 48; see *People v. Collins* (1978) 21 Cal.3rd 208, 213 [(*Collins*)] ['an amendment eliminating criminal sanctions is [itself] a sufficient declaration of the Legislature's intent to bar all punishment for the conduct so decriminalized.'].)" (*People v. Conatser*, *supra*, 53 Cal.App.5th at p. 1229.)

Finally, defendant asks that we remand this case to the trial court to strike the enhancements under section 667.5, subdivision (b). The People, however, argue that if defendant's enhancements are ordered stricken to reduce the sentence, "the matter should

---

[3] We acknowledge that the First District, Division One in *People v. Grzymski* (2018) 28 Cal.App.5th 799, review granted Feb. 13, 2019 (S252911) reached a different conclusion. *Grzymski* held that "an unappealed split sentence is final within the meaning of *Estrada* 60 days after it is imposed," and a defendant appealing a later revocation of mandatory supervision is not entitled to the benefits of subsequently enacted ameliorative legislation. (*Id.* at p. 802.) On May 27, 2020, however, the Supreme Court transferred *Grzymski* to the appellate court with directions to vacate its decision and to reconsider the cause in light of *McKenzie*.

be remanded to permit the district attorney to either accept a reduction of the sentence or withdraw from the plea agreement."  We disagree with the People.

In *People v. Matthews* (2020) 47 Cal.App.5th 857, 866, the court stated that "[a] plea agreement is a binding contract.  '[T]he process of plea negotiation "contemplates an agreement negotiated by the People and the defendant and approved by the court."  Accordingly, because a plea agreement is a contract, "it is interpreted according to general contract principles.  [Citation.]  Acceptance of the agreement binds the court and the parties to the agreement."  (*Ibid.*)  The court went on to state that " 'as a general rule, . . . requiring the parties' compliance with changes in the law made retroactive to them does not violate the terms of the plea agreement, nor does the failure of a plea agreement to reference the possibility the law might change translate into an implied promise the defendant will be unaffected by a change in the statutory consequences attending his or her conviction.  To that extent, then, the terms of the plea agreement can be affected by changes in the law.'  [Citations.]  'If parties to a plea agreement want to insulate the agreement from future changes in the law they should specify that the consequences of the plea will remain fixed despite amendments to the relevant law.' "  (*Id.* at p. 867.)  In this case, the parties made no insulating specifications that the consequences of the plea will remain fixed despite amendments to section 667.5.

The *Matthews* court then went on to observe that the legislative purposes of Sen. No. 136—to eliminate overly expensive and punitive sentences, which tend to increase risk of recidivism; to keep families together; and to promote evidence-based rehabilitation—would be frustrated if trial courts were allowed to unilaterally alter plea

16

agreements after striking enhancement sentences under Sen. No. 136. (*Matthews*, *supra*, 47 Cal.App.5th at p. 868-869.) Therefore, the court concluded that when a defendant agrees to specific terms in a negotiated disposition in a case wherein section 667.5, subdivision (b), enhancements are invalidated under Sen. No. 136, a trial court must strike the prison-prior terms and not reconsider other aspects of the terms of the plea agreement. (*Id.* at p. 869.)

The result in *Matthews* is consistent with the Sixth District Court of Appeal case *People v. Petri* (2020) 45 Cal.App.5th 82. In *Petri*, the defendant admitted a prior prison term under section 667.5, subdivision (b), and he agreed to a stipulated sentence. (*Petri*, at pp. 85-86.) The court ordered the enhancement stricken because Sen. No. 136 was retroactive, the defendant's prior prison term was not for a sexually violent offense, and his case was not final. (*Id.* at pp. 93-95.) The prosecution in *Petri* conceded the enhancement should be stricken.

In this case, defendant is like the defendants in *Matthews* and *Petri* in all respects: Defendant negotiated a deal with enhancements under section 667.5, subdivision (b), before Sen. No. 136; defendant's prior prison terms were not for sexually violent offenses; and defendant's case is not final.

Yet the People say we should reach a different result. The People rely on *People v. Stamps* (2020) 9 Cal.5th 685 (*Stamps*). *Stamps*, however, is inapplicable to this case. The issue in *Stamps* involved the retroactive application of Senate Bill No. 1393— affording trial courts new discretion to strike prior serious felony enhancements in the interests of justice. Under those circumstances, the Supreme Court found that the proper

remedy in cases in which a defendant sought relief under Senate Bill No. 1393 was to remand the matter to the trial court in order that the defendant could seek the benefit. If the court were inclined to exercise its discretion to strike the enhancement, the prosecutor could agree to the downward modification of the sentence. However, if the prosecutor did not agree to the modification, the prosecutor could withdraw the plea agreement. Likewise, the trial court could withdraw its approval of the plea agreement. (*Id*. at pp. 693, 704-708.)

In fact, the People argue that "when a new ameliorative law, applicable under *Estrada*, invalidates an element of a negotiated plea after it has been accepted, the remedy generally is not to permit the court to unilaterally alter the terms of the bargain in the defendant's favor, but to remand to permit the district attorney to withdraw from the agreement (or to agree to the alteration). (See *Stamps*, [*supra*, 9 Cal.5th] at pp. 703-704 [discussing . . . *Collins*[, *supra*,] 21 Cal.3d 208, where crime to which defendant pleaded guilty was subsequently abolished].)"

*Collins*, the case upon which the Supreme Court in *Stamps* relied, has facts that are substantially different than the facts in this case. In *Collins*, the prosecution agreed to dismiss 14 of 15 felony counts for the defendant's guilty plea to one remaining count. (*Collins*, *supra*, 21 Cal.3d at p. 211.) Before sentencing, an amendment decriminalized the single remaining offense. (*Id*. at p. 215.) The court explained, "When a defendant gains *total relief from his vulnerability to sentence*, the state is substantially deprived of the benefits for which it agreed to enter the bargain." (*Ibid.*, italics added.) In contrast, defendant does not seek to invalidate his conviction or to eliminate his punishment.

18

Although the facts in *Stamps* and *Collins* are distinguishable from the facts in this case, the facts are almost identical to that in *Matthews* and *Petri*, as discussed *ante*. The People, however, did not discuss *Matthews* or *Petri* in their briefs.

Notwithstanding the People's argument, we reiterate that *Stamps* involved Senate Bill No. 1393, which gave trial courts discretion to dismiss enhancements that had previously been mandatory. *Stamps* made no reference to Sen. No. 136 or to *Matthews*. The remedy reasoning in *Stamps* centered around whether or not the Legislature intended to overturn long-standing law preventing a court from unilaterally modifying an agreed-upon term by using its discretion to strike enhancements. *Stamps* therefore addressed a different issue from the issue facing Sen. No. 136 cases and therefore does not alter our result.

Therefore, we reject the People's argument that this case should be remanded to allow the prosecutor "to either accept a reduction of the sentence or withdraw from the plea agreement." In *Harris v. Superior Court* (2016) 1 Cal.5th 984 pages 991 through 992, a statute changed the defendant's felony to a misdemeanor and the Supreme Court *rejected* the prosecution's request to reinstate the original charges. (*Ibid.*) The court focused on "whether the electorate intended the change to apply to the parties to this plea agreement." (*Id.* at p. 991.) The *Harris* court determined allowing the prosecution to withdraw and reinstate the original charges would make resentencing under the new law meaningless. It would also thwart a primary purpose of the new law, which was to reduce the number of nonviolent offenders in state prisons. (*Id.* at pp. 991-992.) The same reasoning applies to Sen. No. 136.

## DISPOSITION

The judgment is modified by striking the five, one-year enhancements imposed pursuant to Penal Code section 667.5, subdivision (b).  The trial court is directed to forward a certified copy of the amended abstract to the appropriate authorities.  (*People v. Quinonez* (2020) 46 Cal.App.5th 457, 467.)  In all other respects, the judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER
Acting P. J.

We concur:

RAPHAEL
J.

MENETREZ
J.

20