Filed 2/18/21  P. v. Sapienza CA4/2
Opinion on rehearing

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E070547 |
| v. | (Super.Ct.No. SWF1500341) |
| JEFFREY EDWARD SAPIENZA, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Elaine M. Kiefer, Judge.  Reversed and remanded.

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Gerald A. Engler and Lance E. Winters, Chief Assistant Attorneys General, Julie L. Garland, Assistant Attorney General, and Steve Oetting, Meredith S. White and Daniel Hilton, Deputy Attorneys General, for Plaintiff and Respondent.

1

On August 31, 2015, pursuant to a plea agreement, defendant and appellant Jeffrey Edward Sapienza pled guilty to criminal threats. (Pen. Code, § 422, count 2.)[1] The court imposed the upper term of three years of imprisonment, but it suspended execution of sentence and placed defendant on three years of formal probation from which defendant did not appeal. On January 5, 2018, the trial court found defendant in violation of his probation. On March 23, 2018, the court imposed the three-year suspended sentence and awarded defendant 903 days of custody credits.

On appeal, defendant contended the matter should be conditionally reversed and remanded to the trial court to determine, retroactively, whether he qualified for a pretrial diversion program for individuals diagnosed with qualifying mental disorders pursuant to then-recently enacted section 1001.36. (Stats. 2018, ch. 35, § 24.) The People responded, in part, that even if section 1001.36 could be applied retroactively, defendant's judgment was already final and, thus, defendant was ineligible for consideration for section 1001.36 diversion.

In a published opinion dated August 23, 2019, we affirmed, holding that defendant's judgment was final when the time for filing an appeal from the court's order imposing but suspending execution of sentence on August 31, 2015, had expired. Thus, because any purported retroactivity of section 1001.36 would have extended only to nonfinal judgments, defendant was not entitled to have his matter evaluated for pretrial diversion.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

Since that decision, the court in *People v. Frahs* (2020) 9 Cal.5th 618 (*Frahs*), found that section 1001.36 "applies retroactively to cases in which the judgment is not yet final . . . ." (*Id.* at p. 845; see *id.* at pp. 850-854.) By order dated May 27, 2020, the California Supreme Court directed us to vacate our opinion and reconsider the cause in light of *People v. McKenzie* (2020) 9 Cal.5th 40 (*McKenzie*). (*People v. Sapienza* (May 27, 2020, S258252) ___ Cal.5th ___ [2020 Cal. Lexis 3504].)

In his supplemental briefs on remand, defendant contends that the holding in *McKenzie* requires that we remand the matter to the trial court to conduct a mental health diversion eligibility hearing pursuant to section 1001.36. In their supplemental briefs, the People maintain the *McKenzie* decision has no impact upon this case because, unlike this case, there was no final judgment in *McKenzie*. We affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

In January 2015, the victim drove into his mobilehome park, where defendant waved him down. The victim rolled down his window and asked if he could help defendant. Defendant said the victim was not a man of his word; defendant said something about the victim owing defendant $20. The victim assumed defendant was talking about $20 that defendant's mother had lent the victim.

The victim exited his car. Defendant yelled: "'Give me your money or I'm gonna get it from you.'" Defendant quickly approached the victim and touched his nose to the victim's nose and his chest to the victim's chest. Defendant told the victim to give him

the money or he was going to hurt and kill the victim. The victim was afraid of defendant.

The victim told defendant he had already paid the money back to defendant's mother. Defendant pointed out a car nearby and said: "'You see the [B]lack guy there inside the car? All I have to do is call him, and he'll do it for me.'" The victim "really got very scared." He interpreted defendant's words as a threat to have the man kill him.

The victim told defendant he was going to call the mobilehome manager and the police. Defendant told him: "'Go ahead.'" The victim got into his car and drove off. He did not return home because he was afraid of alerting the man with whom defendant had threatened him with as to the location of his residence. Instead, the victim parked, went to the manager's office, and told her what had occurred. The manager then called the police.

The victim testified that two nights prior to the incident, he found defendant parked in front of his home at 2:00 a.m. The victim was worried because he had been burglarized on several occasions. In May 2016, the victim called the police because defendant contacted him; the victim had a restraining order against defendant.[2]

The People charged defendant by second amended felony complaint with attempted robbery (§§ 664, 211, count 1), two counts of criminal threats (§ 422, counts 2 & 4), misdemeanor elder abuse (§ 368, subd. (c), count 3), and failure to appear

---

[2] At this point, the court recessed the preliminary hearing. Upon return from the recess, defendant entered his plea.

4

(§ 1320.5, count 5). The People additionally alleged defendant had committed the charged offenses while defendant had been released from custody. (§ 12022.1.)

The People and defendant apparently came to a resolution which involved the instant case, four misdemeanor cases, and an admission to a violation of probation. In the instant case, defendant pled guilty to criminal threats (§ 422, count 2) with the understanding defendant would be sentenced to jail for 365 days with credit for 121 days.

The People agreed that defendant "could be accepted into an appropriate dual diagnosis residential treatment program . . . ." Defendant would be required to provide proof that the program had accepted him; if admitted to a rehabilitation program, the court would modify the sentence, release defendant to the program, and allow him to spend the balance of his jail time in the program. The court imposed the upper term of three years, execution of which the court suspended on the condition that defendant successfully complete the terms and conditions of three years of formal, felony probation.

At a hearing on September 24, 2015, the parties confirmed that defendant had been admitted to a rehabilitation program. Upon defendant's agreement, the court ordered defendant released from jail the next day to complete the balance of his custody time in the residential treatment program. The court noted, "I'm going to give you the opportunity to get clean and sober."

On April 5, 2016, the People filed a misdemeanor complaint and petition for revocation of defendant's probation alleging he had resisted arrest. (§ 148, subd. (a)(1).) At a hearing on May 24, the court observed: "I . . . have this document he's in inpatient

5

care at Pacific Grove Hospital." Defendant's attorney stated defendant was "on a psychiatric hold."[3] The court noted that the letter indicated defendant would not be released from the hospital until June 3; defense counsel confirmed this. The court issued a bench warrant, but held it until the second week of June, ordering defendant to appear on June 9.

On June 9, 2016, the People informed the court that they had obtained a letter reflecting defendant had been admitted to a hospital the day before, with an undetermined release date. Defense counsel stated the reason for the hospitalization "seems to be possibly schizophrenia, for all I know."[4] The court continued the matter and held the warrant until June 21.

On July 13,[5] August 8, October 23, November 1, and December 18, 2017, the court continued the matter. On January 5, 2018, the court held a hearing on the petition to revoke defendant's probation.

A police officer testified that on March 31, 2016, he responded to a call regarding "a male acting strangely and being aggressive and loud at the bank." When he arrived, he

---

[3] The letter to which the court referred does not reflect that the hospital was a psychiatric hospital and does not indicate why defendant had been admitted, only that he had been admitted to the hospital.

[4] Again, the letter from the hospital does not reflect that it was a psychiatric hospital or that defendant was admitted for any psychiatric condition.

[5] There is nothing in the record to explain the more than one-year gap between the last continuance and that issued on July 13, 2017.

encountered defendant, who was pacing back and forth in front of the bank yelling. Defendant did not appear to have mental issues but appeared to be agitated.

The officer obtained defendant's name and date of birth; he conducted a records check of defendant. The officer discovered defendant was on formal, felony probation with search terms and that his driver's license had expired on October 22, 2012. The officer found a vehicle associated with defendant and conducted a record check on it. The vehicle had no license plates and was registered to defendant's mother.

The officer told defendant he could not drive any vehicle because his license was expired; defendant acknowledged that he could not drive until he had his license reinstated. The officer contacted defendant's mother, who agreed to come drive the vehicle home. He advised defendant to wait for his mother, which defendant agreed to do. The officer left.

Five minutes later, the officer received a call advising him that defendant had driven the vehicle away. The officer drove to defendant's mother's home. A few minutes later, defendant pulled into the mobilehome park in his mother's vehicle.

The officer ordered defendant to stop and get out of the car. Defendant yelled: "'Not this time, Cop.'" Defendant backed away and drove off. The officer quickly found the vehicle parked at the south end of the mobilehome park, adjacent to a golf course; defendant was not in the car. The officer saw defendant running down an embankment onto the golf course. He gave chase and ordered defendant to get on the ground. Defendant eventually complied. Defendant physically resisted while the officer

7

attempted to handcuff him. The officer and his partner had to drive their patrol car onto the golf course because defendant refused to walk.

Defendant's counsel argued defendant was suffering from mental health issues and, therefore, should be returned to probation. The People noted, "there has been no evidence of any kind of mental health issues that he suffers from." The court also observed there "really was no evidence during the violation hearing" of mental health issues. The court found defendant had violated the terms of his probation.[6] The court then indicated a tentative decision to impose the suspended sentence but observed "there is some history of some type of either mental or substance abuse disorder[s]." The court continued the matter for sentencing.

On March 23, 2018, defense counsel filed a mitigation letter alleging defendant suffered physical disabilities, including a frontal lobe injury, and posttraumatic stress disorder. Defense counsel attached to the mitigation letter an unsigned letter alleging defendant had been admitted to a hospital on June 18, 2016, "on an involuntary basis for treatment of profound levels of depression with [an] active suicidal plan and intent [*sic*] with the patient also reporting onset of auditory hallucinations." At the hearing on the same date, the court imposed the suspended sentence of three years of imprisonment and awarded defendant 903 days of total custody credits.

---

[6] On the same day, defendant entered a plea to the court in another misdemeanor case and admitted a violation of probation in yet another case.

## II.  DISCUSSION

Defendant contends the matter should be conditionally reversed and remanded to the trial court to determine, retroactively, whether defendant qualifies for a pretrial diversion program for individuals diagnosed with qualifying mental disorders pursuant to section 1001.36.  The People contend that because section 1001.36 applies only to nonfinal judgments, defendant is not entitled to an evaluation for a pretrial diversion program because his judgment became final after he failed to file a timely appeal from the court's imposition of sentence on August 31, 2015.  We agree with defendant.

"Section 1001.36 authorizes a pretrial diversion program for defendants with qualifying mental disorders.  The statute defines "'pretrial diversion'" as 'the postponement of prosecution, either temporarily or permanently, at any point in the judicial process from the point at which the accused is charged until adjudication, to allow the defendant to undergo mental health treatment . . . .'" (*Frahs*, *supra*, 9 Cal.5th at p. 626.)

"[A] trial court may grant pretrial diversion if it finds all of the following:  (1) the defendant suffers from a qualifying mental disorder; (2) the disorder played a significant role in the commission of the charged offense; (3) the defendant's symptoms will respond to mental health treatment; (4) the defendant consents to diversion and waives his or her speedy trial right; (5) the defendant agrees to comply with treatment; and (6) the defendant will not pose an unreasonable risk of danger to public safety if treated in the community." (*Frahs*, *supra*, 9 Cal.5th at pp. 626-627.)

"If the defendant makes a prima facie showing that he or she meets all of the threshold eligibility requirements and the defendant and the offense are suitable for diversion, and the trial court is satisfied that the recommended program of mental health treatment will meet the specialized mental health treatment needs of the defendant, then the court may grant pretrial diversion. [Citation.] The maximum period of diversion is two years. [Citation.] If the defendant is subsequently charged with an additional crime, or otherwise performs unsatisfactorily in the assigned program, then the court may reinstate criminal proceedings. [Citation.] 'If the defendant has performed satisfactorily in diversion, at the end of the period of diversion, the court shall dismiss the defendant's criminal charges that were the subject of the criminal proceedings at the time of the initial diversion' and 'the arrest upon which the diversion was based shall be deemed never to have occurred.'" (*Frahs*, *supra*, 9 Cal.5th at p. 627.)

*Frahs* found "that section 1001.36 applies retroactively to all cases not yet final on appeal." (*Frahs*, *supra*, 9 Cal.5th at p. 632.) Because the mental health diversion statute came into effect while the defendant's appeal from his conviction was pending, the court concluded "that a conditional limited remand for the trial court to conduct a mental health diversion eligibility hearing is warranted when . . . the record affirmatively discloses that the defendant appears to meet at least the first threshold eligibility requirement for mental health diversion—the defendant suffers from a qualifying mental disorder." (*Id*. at p. 640.)

10

In *McKenzie*, *supra*, 9 Cal.5th at page 43, in November 2014, the defendant pled guilty in three different cases, in all of which "the trial court suspended imposition of sentence, granted [the] defendant five years' probation, and ordered him to attend drug court." In June 2016, the trial court revoked the defendant's probation and sentenced him to prison. (*Ibid*.) The defendant appealed and the Court of Appeal filed an opinion modifying, but otherwise affirming the judgment. (*Ibid*.)

The defendant petitioned the California Supreme Court for review, which that court granted, and the court remanded the case to the Court of Appeal with directions. On remand, the Court of Appeal "held that [the] defendant could take advantage of the revisions to section 11370.2 that rendered the statute's sentence enhancements inapplicable to his prior drug-related convictions, and the court ordered those four enhancements stricken." (*McKenzie*, *supra*, 9 Cal.5th at p. 44.) The Supreme Court granted review in the "case to decide whether a convicted defendant who is placed on probation after imposition of sentence is suspended, and who does *not* timely appeal from the order granting probation, may take advantage of ameliorative statutory amendments that take effect during a later appeal from a judgment revoking probation and imposing sentence." (*Id.* at p. 43, italics added.)

In a discussion regarding what constitutes a final judgment, the court noted that "a criminal proceeding ends only once probation ends if no judgment has issued in the case." (*McKenzie*, *supra*, 9 Cal.5th p. 47.) "[W]hen a court suspends imposition of sentence and grants probation, the defendant's failure to appeal from the order granting

11

probation generally 'estops' the defendant 'from claiming error *with respect to matters occurring before that order*,' but not as to 'proceedings in connection with the revocation of probation and sentencing.'" (*Id.* at p. 50.)

McKenzie is distinguishable from the instant case in that it involved a grant of probation after the suspension of imposition of sentence, whereas this case involves a grant of probation after the suspension of execution of a sentence was already imposed. As we noted in our previous opinion, there is longstanding recognition of the "important distinction, in probation cases, between orders suspending imposition of sentence and orders suspending execution of previously imposed sentences." (*People v. Howard* (1997) 16 Cal.4th 1081*,* 1087 (*Howard*).) "When the trial court suspends imposition of sentence, no judgment is then pending against the probationer, who is subject only to the terms and conditions of the probation." (*Ibid.*) However, "Unlike the situation in which sentencing itself has been deferred, where a sentence has actually been imposed but its execution suspended, 'The revocation of the suspension of execution of the judgment brings the former judgment into full force and effect . . . .'" (*Ibid.*; see *People v. Kelly* (2013) 215 Cal.App.4th 297, 302 ["[W]hen a court imposes sentence but suspends its *execution* during a period of probation, there is a judgment, and revocation of the order granting probation requires execution of the existing sentence, exactly as imposed."].)

Where a defendant fails to challenge "the validity of the sentence the court imposed when granting probation[,] [n]o good reason exists for allowing [him] to do so once the court revoke[s] [his] probation." (*Howard*, *supra*, 16 Cal.4th at p. 1095; accord,

12

*People v. Superior Court* (*Rodas*) (2017) 10 Cal.App.5th 1316, 1318, 1326 (*Rodas*) [to hold otherwise would have the "absurd effect of encouraging defendants to violate the terms of their probation in the hopes of extending the probation term to take advantage of any beneficial changes in the law during the probationary period"]; see *People v. Scott* (2014) 58 Cal.4th 1415, 1419 [realignment act not applicable to defendants whose sentences were imposed and suspended prior to its enactment].)

Nevertheless, *McKenzie* relied on the court's decision in *People v. Chavez* (2018) 4 Cal.5th 771 (*Chavez*), in which the court noted, "Going as far back as *Stephens v. Toomey* (1959) 51 Cal.2d 864 . . . , we have explained that neither form of probation—suspension of the imposition of sentence or suspension of the execution of sentence—results in a final judgment. In a case where a court suspends imposition of sentence, it pronounces no judgment at all, and a defendant is placed on probation with 'no judgment pending against [him].' [Citation.] In the case where the court suspends execution of sentence, the sentence constitutes 'a judgment provisional or conditional in nature.'" (*Chavez*, at p. 781.) Of course, *Chavez*'s statement regarding the finality of judgment in a situation in which the court had imposed but suspended execution of sentence is dictum because in *Chavez*, the court suspended imposition of sentence, placed the defendant on probation, the defendant completed his probation, and only years later sought to have the action dismissed pursuant to section 1385. (*Chavez*, at pp. 776-777.)

Three published appellate court cases have directly addressed whether a defendant's judgment is final, for retroactive ameliorative purposes, once the court

13

imposes but suspends execution of sentence.  In *People v. Barboza* (2018)
21 Cal.App.5th 1315, "the trial court imposed a six-year prison sentence, suspended
execution of that sentence, and placed defendant on formal probation for five years on
various terms and conditions.  Defendant did not appeal." (*Id*. at p. 1318.)  After the time
for filing an appeal from the imposition of sentence had expired, the defendant filed a
motion seeking relief under Proposition 57 (as approved by voters, Gen. Elec. (Nov. 8,
2016)). (*Barboza*, at p. 1318.)  The court, relying heavily on *Howard*, held that the
defendant was not entitled to the retroactive ameliorative benefits of Proposition 57
because his judgment was final when he failed to appeal the order imposing sentence.
(*Barboza*, at pp. 1318-1319.)

In *People v. Lopez* (2020) 57 Cal.App.5th 409, the court revoked the defendant's
probation, imposed sentence, but suspended execution of sentence; the court then placed
him on mandatory supervision. (*Id*. at p. 412.)  The defendant thereafter violated the
terms of his mandatory supervision. (*Ibid*.)  The defendant moved to vacate his
conviction pursuant to the amendments to Health and Safety Code section 11352, which
would have reduced his conviction to a misdemeanor. (*Lopez*, at pp. 412-413.)  The
court denied the defendant's motion but placed him back on mandatory supervision. (*Id*.
at p. 413.)

The *Lopez* court, citing *McKenzie*, *Chavez*. and *Rodas*, reversed the court's order,
holding that an order imposing sentence but suspending execution thereof results in "only
a provisional or conditional judgment, the finality of which depends on the outcome of

14

the probationary period." (*Lopez, supra*, 57 Cal.App.5th at p. 414.)  Thus, the defendant was entitled to retroactive application of Health and Safety Code section 11352's ameliorative effects because any judgment in his case was not final for that purpose. (*Lopez*, at pp. 414-415.)  Nonetheless, the *Lopez* court was careful to observe that any judgment in its case was not final, at least in part, because the statute authorizing mandatory supervision provided that the court could, at any time, "'revoke, modify, or change the conditions of the court's order suspending the execution of the concluding portion of the supervised person's term.'" (*Id*. at p. 414.)  Thus, the flexibility "expressly contemplated in the statutes that created mandatory supervision" were "inconsistent with the proposition that there was a final judgment, which could not be altered." (*Ibid*.) *Lopez* is distinguishable from the instant case because it involved mandatory supervision rather than probation.

In *People v. Contreraz* (2020) 53 Cal.App.5th 965, 971-972 (*Contreraz*), review granted November 10, 2020, S264638, the court sentenced the defendant, suspended execution of the sentence, and placed the defendant on probation; the defendant did not appeal the order. (*Id*. at pp. 968-969.)  The court later found defendant in violation of his probation and executed the previously suspended sentence. (*Id*. at p. 969.)  On appeal, the defendant contended he was entitled to the retroactive benefits of Senate Bill No. 620 (Reg. Sess. 2017-2018), which the court rejected. (*Id*. at pp. 967, 969.)

Like in this case, the California Supreme Court granted review and transferred the matter back to the court to reconsider in light of *McKenzie*. (*Contreraz*, *supra*,

15

53 Cal.App.5th at pp. 967-968.)  On reconsideration, the court held that the defendant was entitled to have the trial court exercise its discretion as to whether to apply the ameliorative benefits of Senate Bill 620.  (*Contreraz*, at p. 968.)  The court, citing *McKenzie*, *Chavez*, and *Stephens v. Toomey* (1959) 51 Cal.2d 864 (*Toomey*), reasoned "that for retroactivity purposes, suspending execution of [the defendant's] sentence and placing him on probation 'constitute[d] "a judgment provisional or conditional in nature,"' rather than a final judgment, given the court's ongoing authority to revoke, modify, or terminate [the defendant's] probation during the supervision term." (*Contreraz*, at pp. 971-972.)

In *Toomey*, the petitioner had been convicted of robbery, and the court sentenced him to prison.  The petitioner applied for probation, which the court granted.  The court placed him on five years' probation, the term of which had yet to expired.  The petitioner sought to compel the registrar of voters to register him as an elector despite his conviction.  (*Toomey*, *supra*, 51 Cal.2d at pp. 868-869.)

On petition for writ of mandate, the court discussed finality of judgment as follows:  "The word conviction, used in this connection, must mean a final judgment of conviction.  A judgment is not final if there still remains some legal means of setting it aside.  There may be ways to avoid its execution, such as a general pardon, but a judgment in an ordinary criminal case, such as we have here, becomes final when all available means to avoid its effect have been exhausted.  Certain means to that end have been made available to an accused.  The traditional method was by appeal.  The

16

probation laws then intervened.  Since the enactment of those laws in 1903, the offender has been brought before the court for judgment on a plea or verdict of guilty under differing and varying circumstances affecting the powers of the court and the rights of the accused." (*Toomey, supra,* 51 Cal.2d at p. 869.)

The *Toomey* court noted there were three classes of persons in which probation related to the finality of judgment; the second class, which included the petitioner, included, "Those as to whom the court may pronounce judgment, sentence the defendant, suspend the execution of the sentence, and entertain an application for probation." (*Toomey*, *supra*, 51 Cal.2d at p. 870.)  "If the conditions of probation are fulfilled the plea or verdict of guilty may be changed to not guilty, the proceedings be expunged from the record and the case dismissed.  [Citation.]  When such an order has been entered there is no further criminal prosecution pending against the defendant.  He has then, without any further showing of rehabilitation on his part, received a statutory rehabilitation and a reinstatement to his former status in society insofar as the state by legislation is able to do so, with one exception, namely, that under section 1203.4 of the Penal Code the record in the criminal case may be used against him for limited purposes in any criminal proceeding thereafter brought against him.  The judgment in this class is not a final judgment such as to render the prohibitive measure of the Constitution effective.  It is a judgment provisional or conditional in nature.  It is in the process of becoming final in that its finality depends on the outcome of the probationary proceeding." (*Id*. at pp. 870-871)

The *Toomey* court noted, "There is a vast difference between the final judgment and the execution of the judgment." (*Toomey*, *supra*, 51 Cal.2d at p. 873.) In petitioner's case, "there ha[d] been neither a final judgment nor the execution of any judgment." (*Ibid.*) "Judgment was pronounced against him and he was sentenced to prison. Execution of sentence was suspended and he was placed on probation for five years which have not yet expired. The criminal proceeding is still outstanding against him. The judgment may or may not become final depending upon the outcome of the probation proceedings under . . . section 1203.4. If probation be revoked the judgment may be ordered in full force and effect." (*Id.* at p. 875.) The court thus denied his petition because it was premature. (*Ibid.*)

We, like the court in *Contreraz*, distill from *Toomey*, *Chavez*, and *McKenzie*, the rule that an order imposing sentence, suspending execution of that sentence, and granting a defendant probation is not a final judgment for purposes of the application of retroactive ameliorative effects in the law made after the date of such an order. Only upon the finality of the probationary proceedings, whether probation is revoked and the previously imposed but suspended sentence is actually executed, or the defendant successfully completes probation, does the order become a final judgment barring a defendant from obtaining retroactive relief from subsequent changes in the law. Thus, in the instant case, because the order revoking defendant's probation and imposing the previously suspended sentence had yet to become final when defendant sought the

18

benefits of section 1001.36, he is not procedurally barred from seeking relief from that statute.

Nonetheless, the court in *Frahs* noted that a remand for retroactive application of section 1001.36 was warranted only when the record affirmatively disclosed that the defendant appeared to meet at least "the first threshold eligibility requirement for mental health diversion—the defendant suffers from a qualifying mental disorder." (*Frahs*, *supra*, 9 Cal.5th at p. 640.) In *Frahs*, the court found the record did "support the first of the statute's threshold eligibility requirements . . . ." (*Ibid.*) That showing consisted of a clinical and forensic psychologist's testimony that defendant suffered from a qualifying mental disorder and that the behavior resulting in his conviction was a consequence of that disorder. (*Ibid.*)

We recognize that the quantum of "evidence" for a qualifying mental health disorder in the instant case falls far short of that adduced in *Frahs*. Nonetheless, the record does contain "evidence" that defendant suffered one or more mental health issues which should at least entitle defendant to a hearing at which he may have the burden of proving entitlement to section 1001.36 relief. We note that had defense counsel been aware of and acting prospectively to demonstrate defendant's qualification for section 1001.36 relief, he may very well have been able to adduce admissible evidence of a qualifying mental health disorder.

Indeed, at the hearing on May 24, 2016, defendant's attorney stated that defendant had been admitted to a hospital on a "on a psychiatric hold." At the hearing on June 9,

19

2016, defense counsel stated that defendant had been admitted to a hospital for "possibly schizophrenia, for all I know." At the hearing on January 5, 2018, defense counsel argued defendant was suffering from mental health issues and, therefore, should be returned to probation. On March 23, 2018, defense counsel filed a mitigation letter alleging defendant suffered physical disabilities, including a frontal lobe injury and posttraumatic stress disorder. Defense counsel attached to the mitigation letter an unsigned letter alleging defendant had been admitted to a hospital on June 18, 2016, "on an involuntary basis for treatment of profound levels of depression with [an] active suicidal plan and intent [*sic*] with the patient also reporting onset of auditory hallucinations." "This evidence suffices to make a conditional limited remand appropriate here." (*Frahs*, *supra*, 9 Cal.5th at p. 640.)

## III. DISPOSITION

The judgment is conditionally reversed and the matter remanded "with the following instructions for the trial court in considering defendant's eligibility for diversion under section 1001.36: 'If the trial court finds that [defendant] suffers from a mental disorder, does not pose an unreasonable risk of danger to public safety, and otherwise meets the six statutory criteria (as nearly as possible given the postconviction procedural posture of this case), then the court may grant diversion. If [defendant] successfully completes diversion, then the court shall dismiss the charges. However, if the court determines that [defendant] does not meet the criteria under section 1001.36, or if [defendant] does not successfully complete diversion, then

20

his convictions and sentence shall be reinstated.'" (*Frahs*, *supra*, 9 Cal.5th at pp. 640-641.) "We express no view concerning whether defendant will be able to show eligibility on remand or whether the trial court should exercise its discretion to grant diversion if it finds him eligible." (*Id*. at p. 641.)

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:


FIELDS
J.


RAPHAEL
J.