Filed 12/17/25; Opinion following transfer from Supreme Court

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

|  |  |
|---|---|
| KELLIE KUHNEL,<br><br>     Petitioner,<br><br>v.<br><br>APPELLATE DIVISION OF THE SUPERIOR COURT OF CONTRA COSTA COUNTY,<br><br>     Respondent;<br><br>THE PEOPLE,<br><br>     Real Party in Interest. | A163307<br><br>(Contra Costa County<br>Super. Ct. Nos. 01-175495-1,<br>5-210601-1) |

Kellie Kuhnel seeks a writ of mandate directing the trial court to terminate her probation on the ground she is entitled to the retroactive benefit of a statutory amendment reducing the length of probationary terms. Previous law generally allowed a court to place a defendant convicted of a misdemeanor on probation for up to three years. (Pen. Code, former § 1203a.)[1] Effective January 1, 2021, this default period was reduced to one year. (Assem. Bill No. 1950 (2019–2020 Reg. Sess.) (Assembly Bill 1950), Stats. 2020, ch. 328, § 1; Pen. Code, § 1203a.) Our high court recently concluded that because Assembly Bill 1950 applies retroactively to cases that are not yet final, it reduces the length of probationary terms imposed before

---

[1] All undesignated statutory references are to the Penal Code.

1

the new law went into effect and authorizes relief from the consequences of a probationer's acts committed beyond the new maximum period. (*People v. Faial* (2025) 18 Cal.5th 199, 205, 210–211, 220 (*Faial*).)

In this case, Kuhnel was originally placed on three years' probation and allegedly violated its terms during the first year of her probation. The court responded by summarily revoking probation, but not until early in the second year. These events all occurred well before Assembly Bill 1950 was enacted or went into effect, and they were appropriate under then-governing law. (See § 1203.3, subd. (a).) The question before us is whether the rule of retroactivity prevents the court from adjudicating the violation, alleged to have occurred during the period when probation was unquestionably proper, on the ground that probation was not summarily revoked until after the maximum probationary period allowed under Assembly Bill 1950.

In our initial opinion in this case, we concluded that having summarily revoked Kuhnel's probation under these circumstances, the trial court retained jurisdiction to conduct a hearing on the probation violation even after the effective date of Assembly Bill 1950, and we accordingly denied the petition. (*Kuhnel v. Appellate Division of Superior Court* (2022) 75 Cal.App.5th 726 (*Kuhnel I*), ordered not citable on Oct. 29, 2025.) On October 29, 2025, our high court transferred the matter to us to vacate our decision and reconsider in light of *Faial*. (*Kuhnel v. Superior Court* (S274000, Supreme Ct. Mins., Oct. 29, 2025).) Applying Assembly Bill 1950 retroactively in light of this new authority, we now conclude that Kuhnel's probation expired by operation of law before the trial court summarily revoked it, and the court thus lacked jurisdiction to adjudicate the probation violation. We accordingly grant Kuhnel's petition for writ of mandate.

2

## FACTUAL AND PROCEDURAL BACKGROUND

Petitioner Kellie Kuhnel was convicted of misdemeanor embezzlement and placed on probation for three years on November 17, 2016. Eleven months into her probation, in October 2017, the Orinda Police Department received a report that Kuhnel had committed new acts of fraud, and in early December 2017 the probation department submitted to the trial court a notice of the violation. Thirteen months into her probation, on December 11, 2017, the trial court summarily revoked it and set a hearing on the violation. The hearing was continued multiple times, on several occasions because Kuhnel failed to appear and twice in 2021 at her request. In the meantime, Assembly Bill 1950 was passed and came into effect, reducing the period of misdemeanor probation in most cases to one year. (§ 1203a, subd. (a).)

Without a hearing on the probation violation ever being held, Kuhnel moved on June 18, 2021, to terminate her probation, arguing that she had been on probation for more than one year and Assembly Bill 1950 applied retroactively to shorten her probationary term. Relying on *People v. Leiva* (2013) 56 Cal.4th 498 (*Leiva*) and a statutory provision that revocation of probation serves to toll the running of a probationary term (§ 1203.2, subd. (a) (section 1203.2(a)), the People opposed the motion. They argued that the court retained jurisdiction to adjudicate a violation that took place during the original term of probation. The trial court accepted this theory because the alleged violation occurred, at least in part, during the probationary period permitted by Assembly Bill 1950, and accordingly denied Kuhnel's motion on July 9, 2021.

Kuhnel petitioned the trial court's appellate division for a writ of mandate, and the appellate division denied the petition without explanation on August 12, 2021. Kuhnel then petitioned this court for a writ of mandate

3

(Code Civ. Proc., § 904.3), and on September 23, 2021, we issued an alternative writ directing the appellate division of the superior court either to grant her petition or to show cause why a peremptory writ of mandate should not be granted.[2]  The appellate division elected not to grant the petition.  We received additional briefing and held oral argument and then, on February 28, 2022, issued our decision in *Kuhnel I* denying the petition.

Our Supreme Court granted review, and on October 29, 2025 ordered *Kuhnel I* not citable and transferred the matter back to us, with directions to vacate our prior decision and reconsider the cause in light of *Faial*.  The parties have submitted supplemental briefing addressing the effect of *Faial* on this matter.

## DISCUSSION

When Kuhnel was placed on probation, section 1203a provided that courts could suspend the imposition or execution of sentence in misdemeanor cases and "make and enforce . . . terms of probation for a period not to exceed three years," or longer if the maximum term of imprisonment provided by law exceeded three years.  Among the amendments made by Assembly Bill 1950, signed by the Governor on September 30, 2020 and effective January 1, 2021, misdemeanor probation may now not exceed one year, unless the offense provides for a specific probation length, which Kuhnel's crime did not. (§ 1203a; see Stats. 2020, ch. 328, § 1; §§ 487, subd. (a), 489.)  Thus, under the new law, Kuhnel could have been ordered to serve no more than one year of probation for her offense.  Assembly Bill 1950 also reduced the default maximum probationary term for felonies to two years.  (§ 1203.1, subds. (a) & (m); Stats. 2020, ch. 328, § 2.)  Kuhnel contends that these amendments

---

[2] The petition was directed toward the superior court, but we construed it as directed to the appellate division.  (Code Civ. Proc., § 904.3.)

4

apply retroactively and that, as a result, her probation ended as a matter of law on November 17, 2017, and the trial court no longer has jurisdiction over her.

## I. Estoppel

As a threshold issue, the People contend Kuhnel may not challenge the trial court's authority to consider the probation violation because she consented to the court's continuing jurisdiction and contributed to the delays that resulted in the matter being continued until after Assembly Bill 1950 went into effect. They rely for this proposition on *People v. Ford* (2015) 61 Cal.4th 282 (*Ford*), but *Ford* is readily distinguishable.

In *Ford*, the defendant was placed on probation under an agreement that provided he would pay restitution to the victim of his crime. (*Ford*, *supra*, 61 Cal.4th at p. 285.) When the probation officer determined the appropriate amount of restitution, the defendant requested a hearing, which was continued many times, sometimes at his request and always with his consent. (*Id*. at p. 285.) The hearing finally concluded a week after probation expired, at which point the defendant contested the court's jurisdiction to order restitution. (*Id*. at pp. 285–286.) In concluding the trial court could still order restitution, our high court explained that "the expiration of a probationary period does not terminate a court's fundamental jurisdiction"; an award after that time would at most be "an ordinary act in excess of jurisdiction." (*Id*. at p. 287.) Such an act "is treated as valid until set aside," and a defendant who seeks or consents to such an act may be estopped from challenging the court's jurisdiction. (*Ibid*.) Because the defendant's own requests played a role in delaying the hearing and he did not object to a continuance beyond his probationary term, he was estopped from challenging the court's exercise of jurisdiction, *Ford* held. (*Id*. at pp. 288–289.) Other

5

cases have reached similar conclusions. (See *In re Bakke* (1986) 42 Cal.3d 84, 89–90 [trial court had jurisdiction to order execution of jail term that had been stayed at probationer's request]; *In re Griffin* (1967) 67 Cal.2d 343, 348 [estoppel where probationer requested continuance of probation revocation hearing beyond expiration of probationary term]; *People v. Ham* (1975) 44 Cal.App.3d 288, 294 [defendant requested continuance of hearing past probationary period].)

The People argue that Kuhnel is likewise estopped because she was the reason for some of the continuances in this matter and consented to the continuance that placed this case within the effective date of Assembly Bill 1950. But unlike the defendant in *Ford*, Kuhnel neither requested nor consented to delays that directly resulted in the court losing jurisdiction. Rather, if her theory is correct, the trial court should be deemed to have lost jurisdiction in November 2017, before the alleged violation was even reported to the court. The delays Kuhnel sought or agreed to took place *after* that date and therefore did not cause the alleged loss of jurisdiction, except indirectly in that they caused the case to be still pending when the new law was passed and took effect. Because the *Ford* line of cases does not address such indirect effects, we will consider Kuhnel's contentions on the merits.

## II. Retroactivity

We now come to the primary question in this matter: whether Assembly Bill 1950's statutory amendments acted retroactively to bar the trial court from adjudicating the alleged probation violation. As our colleagues in Division Four have explained, although statutes are generally presumed to apply prospectively, the Legislature may " ' "enact laws that apply retroactively, either explicitly or by implication," ' " and " 'amendatory statutes that lessen the punishment for criminal conduct are ordinarily

6

intended to apply retroactively.' " (*People v. Quinn* (2021) 59 Cal.App.5th 874, 881 (*Quinn*).) This is because "[w]hen the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper." (*In re Estrada* (1965) 63 Cal.2d 740, 745.) After such a legislative determination, " 'it is safe to assume . . . that it was the legislative design that the lighter penalty should be imposed in all cases that subsequently reach the courts.' " (*Id.* at pp. 745–746.)

There is now no dispute that, as a general matter, the amendments of Assembly Bill 1950 apply retroactively to the benefit of a person whose judgment is not yet final on appeal.[3] (*Faial, supra,* 18 Cal.5th at p. 211; *People v. Prudholme* (2023) 14 Cal.5th 961, 963 (*Prudholme*) [modifying term of probation to conform with new law while preserving remainder of plea agreement].) Where a defendant was on probation when the legislation became operative, application of this rule is "generally straightforward and settled": courts simply shorten the existing probation term. (*Faial, supra,* 18 Cal.5th at p. 211.) Matters become more complicated when a defendant was *not* on probation when the legislation became operative because probation had been revoked.

In *Faial,* our high court addressed the application of the retroactivity rule where a defendant's probation had been revoked and terminated before the operative date of Assembly Bill 1950, and the defendant had begun

---

[3] *Faial* considered the application of Assembly Bill 1950 to felony rather than misdemeanor probation (imposing a presumptive two-year, rather than one-year, term of probation), but we see no basis to conclude its reasoning and holding do not apply equally to probation based on misdemeanor convictions. (§§ 1203.1, subd. (a), 1203a, subd. (a); see *Quinn, supra,* 59 Cal.App.5th at p. 882, fn. 4 [applying reasoning of case involving misdemeanor probation to felony probation].)

serving the resulting prison sentence.  (*Faial*, *supra*, 18 Cal.5th at pp. 204–205.)  Because the defendant subsequently appealed the order it was not final, the court concluded, and Assembly Bill 1950 retroactively applied to the defendant's case.  (*Faial*, at pp. 212–213.)  As a result, the defendant's probation "terminated by operation of law" two years after it began.  (*Id*. at pp. 213, 205.)  And "conduct that would have constituted a probation violation, but is now deemed to have occurred outside this term, may not be the basis for terminating that probation."  (*Id*. at p. 220.)

In reaching this conclusion, the court addressed policy considerations raised by the Attorney General, in particular whether offering the defendant relief would improperly " 'unwind a lawfully executed sentence following a valid revocation and termination.' "  (*Faial*, *supra*, 18 Cal.5th at p. 213.)  The court acknowledged that "*Estrada* itself 'does not answer the question of *how* [Assembly Bill 1950] should be applied' " in the case before it.  (*Faial*, *supra*, 18 Cal.5th at p. 214.)  But the court hastened to emphasize "the breadth of the 'inference' on which '[t]he *Estrada* rule rests':  'in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not,' " and it explained that, "[a]bsent any savings clause, 'the statute must demonstrate contrary indications of legislative intent " 'with sufficient clarity' " in order to rebut the *Estrada* rule.' "  (*Ibid*., citing *People v. Frahs* (2020) 9 Cal.5th 618, 628 (*Frahs*).)  This rule applies even if the effect is to " 'unwind[]' " the legal consequences of past acts.  (*Faial*, at p. 215.)

Our high court was unpersuaded by the Attorney General's argument that granting relief would " 'extinguish' " a defendant's responsibility for past conduct, noting it had "long rejected the argument that defendants may not

8

benefit from ameliorative statutes that eliminate consequences for past acts." (*Faial*, *supra*, 18 Cal.5th at p. 215, citing *People v. Rossi* (1976) 18 Cal.3d 295, 298 [applying *Estrada* to acts that were criminal at time of commission and judgment but rendered noncriminal by statutory amendment before judgment was final].)  Misconduct committed during the latter portion of defendant's original probation term could not support the revocation and termination of probation precisely because "the probation term effectively ended by operation of law . . . two years after it was imposed."  (*Id.* at p. 218.) Noting the legislative intent in endorsing the shorter probationary term— based on "the reduction of revocations based on technical violations, the efficacy of frontloading services for probationers, and the decreased burden on probation officers by reducing caseloads"—the high court concluded it was "entirely consistent with that intent to afford retroactive relief to persons who have been reincarcerated because of violations that occurred beyond the time limits the Legislature has now established for keeping a defendant on probation."  (*Id.* at p. 219.)  The Court declined to "distinguish between violations that are technical as opposed to criminal," instead concluding that " 'the Legislature "must have intended" to reduce the available probationary period in "every case to which [the amended statute] constitutionally could apply." ' "  (*Id.* at pp. 219, 210, citing *Prudholme*, *supra*, 14 Cal.5th at p. 969; see also *id.* at p. 209, citing *People v. Esquivel* (2021) 11 Cal.5th 671, 675 ["in the absence of a contrary indication of legislative intent," retroactivity "applies to all cases that are not yet final"].)

Nodding to the argument that it was "anomalous to apply *Estrada*" for the benefit of " 'failed probationers,' " the Court observed, " 'some odd results are inevitable with any rule of retroactivity.' "  (*Faial*, *supra*, 18 Cal.5th at pp. 218–219.)  The court also recognized that its interpretation might result

9

in a " 'windfall' " to defendants in cases where the prosecutor had forgone a new criminal prosecution in favor of treating a probationer's new criminal conduct as a mere probation violation. (*Id*. at p. 220.) But it concluded that denying retroactive relief on this ground would be in tension with the statutory purpose of " 'reduc[ing] the length of probation *across the board* in order to increase probationary effectiveness and reduce the likelihood of incarceration for minor probation violations.' " (*Ibid*., quoting *Prudholme*, *supra*, 14 Cal.5th at p. 977.) It therefore declined to base its determination of retroactivity of the facts of any individual case. (*Faial*, at p. 220.)

The procedural posture of the case before us is different from that in *Faial*, because here the offending conduct took place during a portion of the probationary period that is valid even under current law. *Faial*'s holding was directed at prohibited conduct that "is now deemed to have occurred outside [a probation] term." (*Faial*, *supra*, 18 Cal.5th at p. 220.) But, as we shall explain, we are nevertheless persuaded the reasoning of *Faial* points toward a conclusion that the statutory amendments act retroactively to prevent the trial court from acting on a probation violation when, as here, probation was not revoked before the probationary period ended.

The rules governing the adjudication of probation violations inform our inquiry. First, as a general rule, only "during the term of probation" does the court have authority to revoke or modify an order placing the defendant on probation. (§ 1203.3, subd. (a); *In re Bakke*, *supra*, 42 Cal.3d at p. 89.) Once probation expires, the trial court loses jurisdiction to modify its terms. (*People v. Chavez* (2018) 4 Cal.5th 771, 782 (*Chavez*) [after probation ends, court "may no longer revoke or modify its order granting probation"]; see also *In re Griffin*, *supra*, 67 Cal.2d at p. 346 [same].) As *Chavez* explains, the probationary period " 'terminates automatically on the last day,' " and in the

absence of special circumstances such as consent to a continuance, "discharge from probation is mandatory once the probation terms expires[, and]. . . the court loses its ability to pronounce judgment on the defendant at this point." (*Chavez*, at p. 783.)

The second rule modifies the first: revocation of probation, "summary or otherwise, shall serve to toll the running of the probationary period." (Former § 1203.2(a).)[4]  The Legislature added this provision in 1977 to respond to two then-current appellate decisions construing section 1203.3 to require even the formal revocation hearing—compliant with *Morrissey v. Brewer* (1972) 408 U.S. 471 and *People v. Vickers* (1972) 8 Cal.3d 451—to conclude before the probationary period expired.  (See *Leiva*, *supra*, 56 Cal.4th at p. 512.)  The Legislature added a tolling provision because it "was focused on *preserving the jurisdiction* of the trial court to hold formal probation violation hearings that met *Morrissey-Vickers* requirements after the period of probation had expired." (*Ibid*.)  It is now well established that summary revocation of probation is appropriate and preserves a court's jurisdiction over a probationer, "even if the evidentiary hearing, formal revocation and sentencing all occur after the period of probation would otherwise have been completed." (*People v. Journey* (1976) 58 Cal.App.3d 24, 27 (*Journey*); accord, *People v. Medeiros* (1994) 25 Cal.App.4th 1260, 1267; § 1203.2(a).)

The parties disagree on how these principles and the rule of *Faial* apply to the case before us.  The order summarily revoking Kuhnel's probation was made within the period circumscribed by the original order of

---

[4] The principle remains in the current version of section 1203.2(a) but is articulated in more general terms: "revocation, summary or otherwise, shall serve to toll the running of the *period of supervision*." (§ 1203.2(a), italics added.)

probation as required by *Chavez*, but Kuhnel is quick to point out that it was *not* made within the one-year probationary period that retroactive application of Assembly Bill 1950 would have allowed. Citing section 1203.2(a) and *Leiva*, the Attorney General argues that even after enactment of Assembly Bill 1950 the trial court retains jurisdiction to adjudicate probation violations occurring during the original grant of probation. In *Leiva*, our Supreme Court ruled that the tolling provision of former section 1203.2(a) was intended to preserve a court's jurisdiction to act on a violation after it summarily revoked probation, even if the probationer did not appear for a formal hearing until after the expiration of the term; however, the provision was not intended to extend the terms and conditions of probation indefinitely so as to authorize a finding that probation was violated by acts committed *after* the original probationary term. (*Leiva*, *supra*, 56 Cal.4th at pp. 514–515.) The Attorney General urges that we should derive from *Estrada*, *Leiva*, and *Faial* a bright line rule that a trial court retains jurisdiction to resolve a probation violation stemming solely from conduct that took place during the period that remains lawful after Assembly Bill 1950.

While a reasonable case can be made for this approach, and indeed we previously accepted it, in our view *Faial* leads to a different result. Although the court there declined to decide the precise question before us, its reasoning rests in significant part on the conclusion that, after enactment of Assembly Bill 1950, the defendant's probation period "terminated by operation of law" at the end of the *newly permissible* probation period. (*Faial*, *supra*, 18 Cal.5th at pp. 213, 212, fn.4, 218) And after termination of probation, the trial court loses jurisdiction to adjudicate a probation violation unless it has summarily revoked probation during the probationary term. (*Chavez*, *supra*,

12

4 Cal.5th at pp. 782–783; *Leiva*, *supra*, 56 Cal.4th at p. 515; *Journey*, *supra*, 58 Cal.App.3d at p. 27.)

Bearing in mind the reasoning of *Faial*, we see no reason that this rule should not apply retroactively in the circumstances before us. The Attorney General argues that we should interpret Assembly Bill 1950 in light of the legislative purpose of shortening probation terms because supervision is more beneficial in the early part of a term, because lengthier supervision may lead to increased involvement with the criminal justice system, and because shortening terms would allow probation officers to focus their resources more effectively—purposes that would not be forwarded by giving a retroactive free pass for misconduct during the one-year-period currently allowed. (*Faial*, *supra*, 18 Cal.5th at pp. 207–208.) But a similar argument did not carry the day in *Faial*. (*Id*. at p. 214.) The effect of the statutory amendment, our high court ruled, was to terminate probation retroactively by operation of law. (*Id*. at p. 218.) The Legislature is deemed to be aware that "in order to rebut *Estrada*'s inference of retroactivity concerning ameliorative statutes, the Legislature must 'demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it.' " (*Frahs*, *supra*, 9 Cal.5th at p. 634.) It did not do so in adopting Assembly Bill 1950. (See *Faial*, *supra*, 18 Cal.5th at p. 210, citing *Prudholme*, *supra*, 14 Cal.5th at p. 969.)

We recognize that applying Assembly Bill 1950 retroactively in this case appears to give Kuhnel a "windfall." (*Faial*, *supra*, 18 Cal.5th at p. 220.) We also recognize that, because the amendments had not yet been enacted at the time Kuhnel allegedly violated her probation, the prosecutor had no incentive to move swiftly to have her probation summarily revoked before the end of a one-year period. But we are instructed that we may not interpret the statutory language on a case-by-case basis. (*Ibid*.; accord, *Prudholme*,

13

*supra*, 14 Cal.5th at p. 977.)  In the circumstances, applying Assembly Bill 1950 retroactively leads us to conclude that Kuhnel's probation expired by operation of law on November 17, 2017, and the trial court accordingly lacked jurisdiction to adjudicate the notice of probation violation filed in December 2017.  We must accordingly grant her petition for writ of mandate.

## DISPOSITION

Our decision in *Kuhnel I* is vacated.  Let a peremptory writ of mandate issue directing respondent appellate division to vacate its order denying Kuhnel's petition for writ of mandate and to enter a new and different order granting the petition and directing the superior court to (1) vacate its order denying Kuhnel's June 18, 2021 motion to terminate court probation and (2) enter a new and different order granting the motion and terminating probation, and make any other necessary orders consistent with the views expressed in this opinion.


TUCHER, P.J.


WE CONCUR:

FUJISAKI, J.
PETROU, J.


*Kuhnel v. Appellate Division of the Superior Court* (A163307)


14

Trial Court:        Contra Costa County Superior Court

Trial Judge:        Hon. Brian F. Haynes

Counsel:        Robin Lipetzky and Ellen McDonnell, Public Defenders, and Lyla Bugara and Jeremy Price, Deputy Public Defenders for Petitioner

Diana Becton, District Attorney, Ryan Wagner and Daniel Becker, Deputy District Attorneys for Real Party in Interest